## Bollinger *v.* Central Pennsylvania Quarry Stripping and Construction Co., Appellant.

Argued April 28, 1967. Before Bell, C. J., Musmanno, Jones, Eagen, O'Brien and Roberts, JJ.

*Elaine M. Kalenevitch,* with her *Edward C. First, Jr., John E. Cotsack,* and *McNees, Wallace & Nurick,* for appellant.

*Leon H. Kline,* with him *Martin H. Philip,* for appellees.

Opinion by Mr. Justice Musmanno, May 24, 1967:

Mahlon Bollinger and his wife, Vinetta C. Bollinger, filed an action in equity against the Central Pennsylvania Quarry Stripping and Construction Company asking that a contract entered into between them be reformed so as to include therein a paragraph alleged to have been omitted by mutual mistake and that the agreement, as reformed, be enforced.

The agreement, as executed, provided that the defendant was to be permitted to deposit on the property of the plaintiffs, construction waste as it engaged in work on the Pennsylvania Turnpike in the immediate vicinity of the plaintiff's property. The Bollingers claimed that there had been a mutual understanding between them and the defendant that, prior to depositing such waste on the plaintiffs' property, the defendant would remove the topsoil of the plaintiffs' property, pile on it the waste material and then restore the topsoil in a way to cover the deposited waste. The Bollingers averred that they had signed the written agreement without reading it because they assumed that the condition just stated had been incorporated into the writing.

When the defendant first began working in the vicinity of the plaintiffs' property, it did first remove the topsoil, deposited the waste on the bare land, and then replaced the topsoil. After a certain period of time, the defendant ceased doing this and the plaintiffs remonstrated. The defendant answered there was nothing in the written contract which required it to make a sandwich of its refuse between the bare earth and the topsoil. It was at this point that the plaintiffs discovered that that feature of the oral understanding had been omitted from the written contract. The plaintiff husband renewed his protest and the defendant's superintendent replied he could not remove the topsoil because his equipment for that operation had been taken

away. When he was reminded of the original understanding, the superintendent said, in effect, he couldn't help that.

The plaintiffs then filed their action for reformation of the contract, the court granted the requested relief, and the defendant firm appealed. We said in *Bugen v. New York Life Insurance Co.*, 408 Pa. 472: "A court of equity has the power to reform the written evidence of a contract and make it correspond to the understanding of the parties . . . However, the mistake must be mutual to the parties to the contract." The fact, however, that one of the parties denies that a mistake was made does not prevent a finding of mutual mistake. *Kutsenkow v. Kutsenkow*, 414 Pa. 610, 612.

Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing. However, equity would completely fail in its objectives if it refused to break a hole through the wall when it finds, after proper evidence, that there was a mistake between the parties, that it was real and not feigned, actual and not hypothetical.

The chancellor, after taking testimony, properly concluded: "We are satisfied that plaintiffs have sustained the heavy burden placed upon them. Their understanding of the agreement is corroborated by the undisputed evidence. The defendant did remove and set aside the top soil on part of the area before depositing its waste and did replace the top soil over such waste after such depositing. It follows it would not have done so had it not so agreed. Further corroboration is found in the testimony that it acted similarly in the case of plaintiffs' neighbor Beltzner."

After the court handed down its decree nisi, the defendant petitioned for a rehearing on the ground of

after-discovered evidence. Even assuming, without so deciding, that the so-called after-discovered evidence qualified as such, it is not clear that it was sufficiently material or relevant to bring about a change in the result reached by the chancellor, and he so stated in his opinion. We are satisfied that the proffered evidence would not be inconsistent with the chancellor's findings.

Decree affirmed, costs on the appellant.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the consideration or decision of this case.