682 A.2d 824

**Michael J. MORMELLO, Appellee,**

v.

**Elaine J. Depaul MORMELLO, Appellant.**

Superior Court of Pennsylvania.

Argued April 18, 1996.

Filed Aug. 22, 1996.

592

Thomas J. Bass, Philadelphia, for appellant.

Beth N. Forman, Broomall, for appellee.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

KELLY, Judge:

In this appeal we are called upon to determine whether the trial court properly enforced a property settlement agreement that was drafted by appellee's attorney which contained no specific valuations of the various marital assets to be distributed to the parties. We hold that under the circumstances presented in this case, the property settlement agreement failed to provide the requisite full and fair disclosure of the value of the marital assets to be distributed to the parties.

Accordingly, we reverse the trial court's order denying appellant's petition for special relief and remand to the trial court for the commencement of proceedings in equitable distribution.

The relevant facts and procedural history of this case are as follows. Appellant, Elaine Mormello, and appellee, Michael Mormello, were married on May 17, 1964. They have four children, all of whom are now emancipated. During the marriage, the wife worked as a management assistant for the Navy Yard for nine years but also contributed to the household as a homemaker. The wife's only source of income is her $546.00 monthly Social Security Disability Benefit which she receives because she has a form of Muscular Dystrophy.

The husband worked for the City of Philadelphia as a police officer for almost the entire term of the marriage. The husband currently receives a pension in the amount of $1,500.00 a month from the City of Philadelphia, and he is presently employed with the Pennsylvania Attorney General's Office earning an annual salary of approximately $33,000.00.

In April of 1993, after nearly twenty-nine years of marriage, the husband stopped sleeping at the marital residence, and the parties effectively separated. On October 25, 1993, the husband visited his wife at his daughter's house where the wife was babysitting their twin one-year-old grandchildren. The husband presented the wife with a twelve page, type-written Property Settlement Agreement which an attorney had prepared for and explained to the husband. The husband told the wife to sign the agreement, and when the wife asked if she could read it, the husband responded negatively and told the wife that he had to get to work. When the wife asked the husband what the agreement said, he told her that it only said that she would receive the house and the car and that he would continue to pay for them. The husband failed to mention anything about the wife's relinquishing all of her rights to the remaining marital property. The husband was only in the house for somewhere between five and twenty minutes. With one grandchild in her arms and another walking about the room, the wife signed and initialed but did not

read the Property Settlement Agreement. After the husband's abrupt departure, the wife was not even left with a copy of the agreement, and she would not receive one for several days.

The Property Settlement Agreement provided that the husband will continue to make monthly mortgage and car payments and will transfer the titles of the home and car to the wife. The monthly mortgage payment on the house is $888.00. The wife's insurer, CUNA Mutual Insurance Society, pays $833.33 of the monthly payment, so the husband's monthly mortgage payment is $54.67. CUNA will continue to make the payment so long as the wife's disability, which is permanent, lasts.

The Property Settlement Agreement also provided that both parties waive any claims against the other. This provision waives the wife's claim to the largest asset of the marriage, the husband's $300,000.00 pension. Finally, the terms of the Property Settlement Agreement provided that "[t]he parties warrant and represent that they have made a full and fair disclosure of all assets prior to the execution of this agreement." Property Settlement Agreement at 12, Clause 22.

The trial court denied the wife's petition for special relief. The trial court found that although the wife had minimal time to review the Property Settlement Agreement, she knowingly and intentionally signed it on October 25, 1993. The trial court further found that the wife signed the Property Settlement Agreement in the absence of duress, fraud, or misrepresentation. The wife filed a timely appeal from the trial court's order.

Appellant-wife raises the following issues for our review:

1. WHETHER A POSTNUPTIAL PROPERTY SETTLEMENT AGREEMENT IS VALID WHEN THE HUSBAND MISREPRESENTS THE ENTIRE CONTENTS OF THE AGREEMENT AND DOES NOT PROVIDE THE WIFE WITH AN OPPORTUNITY TO READ THE AGREEMENT OR SEEK THE AD-

VICE OF COUNSEL BEFORE SIGNING THE AGREEMENT.

2. WHETHER A POSTNUPTIAL PROPERTY SETTLEMENT AGREEMENT IS VALID WHEN THE HUSBAND PROMISES TO PAY THE REMAINING MORTGAGE ON THE MARITAL HOME WHEN THE MORTGAGE IS ALREADY BEING PAID FOR AND WILL CONTINUE TO BE PAID FOR BY A DISABILITY INSURANCE COMPANY FOR THE REMAINDER OF THE MORTGAGE.

Appellant's Brief at 3.

In her first issue on appeal, the wife argues that the Postnuptial Property Settlement Agreement, which the wife signed voluntarily, is not valid because the wife signed the agreement based on the husband's misrepresentations as to its content and legal effect. The wife also claims that the Property Settlement Agreement is not valid because the husband failed to make a full and fair disclosure of the parties' worth and of the statutory rights being relinquished.

██ In analyzing the validity of the Postnuptial Property Settlement Agreement, we note that the same principles of law apply to both antenuptial and postnuptial agreements. *Adams v. Adams,* 414 Pa.Super. 634, 637, 607 A.2d 1116, 1118 (1992); *Nitkiewicz v. Nitkiewicz,* 369 Pa.Super. 504, 510 n. 2, 535 A.2d 664, 667 n. 2 (1988) (citing *In re Ratony's Estate,* 443 Pa. 454, 277 A.2d 791 (1971)).

The eminent authority on the validity of ante-nuptial agreements is the Pennsylvania Supreme Court case of *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162 (1990). In *Simeone,* our Supreme Court narrowed the earlier plurality decision of *In re Estate of Geyer,* 516 Pa. 492, 533 A.2d 423 (1987). The court explained:

Further, *Geyer* and its predecessors embodied substantial departures from traditional rules of contract law, to the extent that they allowed consideration of the knowledge of the contracting parties and reasonableness of their bargain as factors governing whether to uphold an agree-

ment. Traditional principles of contract law provide perfectly adequate remedies where contracts are procured through fraud, misrepresentation, or duress. Consideration of other factors, such as the knowledge of the parties and the reasonableness of their bargain, is inappropriate. *See Geyer,* 516 Pa. at 516–17, 533 A.2d at 434–35 (Flaherty, J. dissenting). Prenuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts. *See Geyer,* 516 Pa. at 508, 533 A.2d at 431 ("These agreements are nothing more than contracts and should be treated as such." (Nix, C.J. dissenting)). Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements.

Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains. *See Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (failure to read a contract does not warrant avoidance or nullification of its provisions); *Estate of Brant,* 463 Pa. 230, 235, 344 A.2d 806, 809 (1975); *Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co.,* 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing."); *Montgomery v. Levy,* 406 Pa. 547, 550, 177 A.2d 448, 450 (1962) (one is legally bound to know the terms of the contract entered). Based upon these principles, the terms of the present prenuptial agreement must be regarded as binding, without regard to whether the terms were fully understood by appellant. *Ignorantia non excusat.*

*Id.* at 399–400, 581 A.2d at 165–66.

Nonetheless, the court in *Simeone v. Simeone* emphasized that it did not abrogate the requirement of full and fair disclosure in ante-nuptial agreements.

In discarding the approach of *Geyer* that permitted examination of the reasonableness of prenuptial agreements and allowed inquires [sic] into whether parties had attained informed understandings of the rights they were surrendering, we do not depart from the long standing principles that a full and fair disclosure of the financial positions of the parties is required. Absent this disclosure, a material misrepresentation in the inducement for entering a prenuptial agreement may be asserted. [*In re Estate of Hillegass*, 431 Pa. 144, 152–53, 244 A.2d 672, 676–77 (1968).] Parties to these agreements do not quite deal at arm's length, but rather at the time the contract is entered into stand in a relation of mutual confidence and trust that calls for disclosure of their financial resources. *Id.* at 149, 244 A.2d at 675; *Gelb Estate*, 425 Pa. 117, 120, 228 A.2d 367, 369 (1967). It is well settled that this disclosure need not be exact, so long as it is "full and fair." *Kaufmann Estate*, 404 Pa. 131, 136 n. 8, 171 A.2d 48, 51 n. 8 (1961). In essence therefore, the duty of disclosure under these circumstances is consistent with traditional principles of contract law.

*Id.* at 402–03, 581 A.2d at 166–67. The court then reiterated the presumptions and burdens with regard to the validity of ante-nuptial agreements.

If an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence. *Hillegass*, 431 Pa. at 152–53, 244 A.2d at 676–77.

*Id.* at 403, 581 A.2d at 167.

*Cooper v. Oakes*, 427 Pa.Super. 430, 434–36, 629 A.2d 944, 946–47 (1993).

■ Prenuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable

598

to other types of contracts. *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162, 165 (1990); *see generally Cooper v. Oakes, supra* at 434, 629 A.2d at 946. In *Simeone v. Simeone, supra*, the Supreme Court explained:

> Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements.
>
> Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains. *See Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (failure to read a contract does not warrant avoidance or nullification of its provisions); *Estate of Brant*, 463 Pa. 230, 235, 344 A.2d 806, 809 (1975); *Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co.*, 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing."); *Montgomery v. Levy*, 406 Pa. 547, 550, 177 A.2d 448, 450 (1962) (one is legally bound to know the terms of the contract entered). Based upon these principles, the terms of the present prenuptial agreement must be regarded as binding, without regard to whether the terms were fully understood by appellant. *Ignorantia non excusat.*
>
> Accordingly, we find no merit in a contention raised by appellant that the agreement should be declared void on the ground that she did not consult with independent legal counsel. To impose a *per se* requirement that parties entering a prenuptial agreement must obtain independent legal counsel would be contrary to traditional principles of contract law, and would constitute a paternalistic and unwarranted interference with the parties' freedom to enter contracts.

*Simeone v. Simeone, supra* at 400, 581 A.2d at 165–66.

■ In the instant case, there is no merit to the appellant-wife's claim that the Property Settlement Agreement is not

valid because the husband allowed her little time to read the agreement and no time to take it to an attorney. The trial court's order of July 18, 1995 found that the wife knowingly and intelligently signed the agreement in the absence of duress, fraud, or misrepresentation. Because the wife voluntarily signed a properly constructed Property Settlement Agreement, she is not entitled to relief from the agreement on that basis.

Appellant-wife also challenges the agreement on the basis that she did not receive full and fair disclosure of her legal rights under the Divorce Code. For a Postnuptial Property Settlement Agreement to be valid, there must be evidence that the parties are aware of the statutory rights they are relinquishing. *In re Estate of Geyer*, 516 Pa. 492, 506, 533 A.2d 423, 429–30 (1987); *Adams v. Adams*, 414 Pa.Super. 634, 638, 607 A.2d 1116, 1119 (1992). The agreement in this case clearly mentions appellant's rights by way of dower, curtesy, widow's rights, and family exemption on pages four and five. It also mentions support, maintenance, alimony, alimony *pendente lite* and counsel fees as rights discharged by the agreement. The fact that the wife chose not to hire an attorney to clarify any misunderstanding she may have had concerning the agreement is of no consequence. Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood. *Simeone v. Simeone, supra* at 400, 581 A.2d at 165; *Adams v. Adams, supra* at 638, 607 A.2d at 1119. Therefore, we find that based upon the facts, full and fair disclosure of the parties statutory rights was made in the Postnuptial Property Settlement Agreement.

The appellant-wife further claims that the agreement failed to make full and fair disclosure of the parties' worth. Absent this disclosure, a material misrepresentation in the inducement for entering a prenuptial agreement may be asserted. *Simeone v. Simeone, supra* at 402, 581 A.2d at 167; *Adams v. Adams, supra* at 637–38, 607 A.2d at 1118. It is well-settled that the disclosure need not be exact, so long as it

is "full and fair," and does not "obscure the general financial resources of the parties." *Simeone v. Simeone, supra; In re Estate of Geyer, supra* at 502, 533 A.2d at 427; *Adams v. Adams, supra* at 638, 607 A.2d at 1118; *Nigro v. Nigro,* 371 Pa.Super. 625, 631, 538 A.2d 910, 913–14 (1988). According to the Pennsylvania Supreme Court, whether adequate disclosure has been made will depend on the facts and circumstances of individual cases. *Nigro v. Nigro, supra* at 631–32, 538 A.2d at 914 (citing *In re Estate of Geyer, supra* at 502, 533 A.2d at 428).

The facts and circumstances of this case are significantly different from those in *Adams v. Adams, supra* and *Nigro v. Nigro, supra,* two recent cases applying the "full and fair disclosure" test to a Postnuptial Property Settlement Agreement. In *Adams v. Adams, supra,* the court relied upon the fact that the appellant-wife was "involved in her husband's business" to support its finding that the wife was "an intelligent women who had sufficient knowledge of her husband's business for there to have been full and fair disclosure at the time the agreement was executed." *Adams v. Adams, supra* at 638, 607 A.2d at 1118.

In *Nigro v. Nigro, supra,* the court similarly relied upon the appellant-wife's considerable involvement in the operation and management of the husband's pizza-shop business to determine that the wife was fully and fairly aware of the marital estate. *Nigro v. Nigro, supra* at 632, 538 A.2d at 914 (noting that the wife testified extensively concerning the pizza business, worked in all three stores on a regular basis, managed a store, knew appellee's weekly salary, and knew the approximate gross daily receipts from the store she managed).

The facts and circumstances in the case before us do not demonstrate that the wife was fully and fairly aware of the marital estate. Unlike *Adams v. Adams, supra* and *Nigro v. Nigro, supra,* where the appellant-wives assisted their husbands in the running of privately owned business enterprises, the wife in this case could not and did not involve herself in her husband's police duties. The wife expressed no knowl-

edge in the notes of testimony as to the husband's monthly pension payments or his gross salary from the attorney general's office.

Furthermore, the Property Settlement Agreement in this case obscures the general financial resources of the parties. In declaring that the husband will pay the remainder of the $65,000.00 mortgage on the marital abode, there is no mention of the fact that the wife's insurance actually pays $833.33 of the $888.00 monthly mortgage payment leaving the husband with a monthly mortgage payment of $54.67. Similarly, there is no mention in the agreement of the amount and duration of the monthly car payments for which the husband is responsible. The agreement also fails to state the value of the husband's pension, the greatest asset of the marriage, and the wife's disability payments. The only valuation to be found in the agreement is the $65,000.00 remaining on the mortgage on the house, and, as noted above, that figure does not accurately reflect the husband's monetary obligation to the wife. The facts and circumstances in this case indicate that the appellant-wife did not receive full and fair disclosure of the appellee-husband's worth and that the Postnuptial Property Settlement Agreement obscured the general financial resources of the parties. Unlike the appellant-wives in *Adams v. Adams, supra* and *Nigro v. Nigro, supra,* the wife in this case did not have sufficient knowledge of her husband's financial situation for there to have been full and fair disclosure at the time the parties executed the agreement. The vagueness of the agreement itself did not help to inform the wife as to the financial situation of the parties and, actually, further obscured the financial situation.

Accordingly, although the terms of the Property Settlement Agreement explicitly provided that full and fair disclosure of the value of the marital estate was made to the wife in this agreement, thus creating a presumption that full and fair disclosure had been made, the wife, based upon clear and convincing evidence presented at trial, has successfully overcome this presumption and proven that the Property Settlement Agreement did not, in fact, actually contain full and fair

disclosure of the total overall value of the marital estate and the percentage of this overall marital estate that was to be distributed to the parties through the terms of the Property Settlement Agreement. *See Simeone v. Simeone, supra* at 403, 581 A.2d at 167; *Cooper v. Oakes, supra* at 436, 629 A.2d at 947. Therefore, the Property Settlement Agreement is invalid and the wife's petition for special relief must be granted.

■ In her second issue on appeal, the wife argues that the Postnuptial Property Settlement Agreement is invalid because although the husband claims that he will pay the remaining mortgage on the marital home, the wife's insurance pays $833.33 of the $888.00 monthly payment. In discussing the wife's first issue on appeal, we noted that the Property Settlement Agreement's lack of clarity and specificity concerning the payment of the monthly mortgage on the marital abode obscures the general financial resources of the parties and contributed to the finding that the wife did not receive full and fair disclosure of the parties' financial situation. Under the same reasoning as we discussed in our answer to the first question on appeal, the Property Settlement Agreement is invalid and the wife's petition for special relief must be granted.[1] Accordingly, we reverse the trial court's order denying the wife's petition for special relief and remand the case to the trial court for further proceedings in which all of the wife's rights and remedies under the Divorce Code are reinstated.

Based upon the foregoing, the trial court's order denying the petition for special relief is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

JOHNSON, J., files a concurring and dissenting opinion.

1. Appellee's motion to quash is denied. The trial court's order is a final judgment pertaining to the validity of the Property Settlement Agreement and therefore appealable. *Adams v. Adams, supra* at 636, 607 A.2d at 1117.

JOHNSON, Judge, concurring and dissenting.

I join so much of the Majority Opinion as finds that the Postnuptial Property Settlement Agreement is invalid because Wife did not receive full and fair disclosure of Husband's worth. Majority opinion at 598–601. I also agree that Wife's petition for special relief must be granted.

I am unable, however, to join my colleagues' conclusion that there is no merit to Wife's claim that the Agreement should be declared invalid on the basis of duress and/or misrepresentation. *Id.* at 598–599. While it is true that the trial court concluded that Wife was not under any duress nor did there exist any misrepresentation at the time the agreement was signed, we are not bound by the trial court's conclusions of law. *Com. ex rel. Robinson v. Robinson,* 505 Pa. 226, 236, 478 A.2d 800, 806 (1984) (appellate court not bound by deductions or inferences made by trial court from its findings of fact, nor must a reviewing court accept a finding which has no competent evidence to support it); *Mumma v. Mumma,* 380 Pa.Super. 18, 550 A.2d 1341 (1988), *appeal denied,* 524 Pa. 629, 574 A.2d 70 (1990) (same).

On this issue, the only finding of fact by the trial court was that "Mrs. Mormello had minimal time to review the Property Settlement Agreement." The balance of the court's assertions on this issue, contained in the Order dated July 18, 1995, are conclusions of law which are not supported by any findings of fact.

Husband made an unannounced visit to his daughter's house, where Wife was babysitting twin one-year-old grandchildren. He presented Wife with a twelve-page, typewritten Agreement. On questioning by the trial court, Husband testified that he told Wife that he would try to help her pay for the attorney fees to go over the agreement "in case she didn't like the agreement, if she wanted to go to an attorney, if she didn't know what she was signing." N.T., January 3, 1995, at 83, R.R. at 43a. Husband left his daughter's home that day, after a visit that did not exceed twenty minutes, with both copies of the Agreement signed by Wife.

I note that the copy of the agreement included in the certified record bears the signature of Husband's counsel as well as the affidavits of a notary public that both Husband and Wife had appeared before her and acknowledged execution of the agreement. At the hearing held January 3, 1995, Wife testified that no notary was present when Husband caused her to sign the copies of the agreement. Further exploration of this discrepancy was interrupted by objection by counsel for Husband which was not ruled on by the trial court. *Id.* at 15, R.R. at 18b.

Wife testified that she received a copy of the agreement a few days after she had signed it and that, after reading it three times, she called Husband and asked him to go over it with her. *Id.* at 17, R.R. at 19b. She further testified that when she raised matters with which she had a problem, Husband responded to the effect: "Don't worry about it. It's only if we get a divorce." *Id.*

Without additional written findings of fact by the trial court, I am not prepared to accept that court's conclusion that Wife was neither under any duress nor did there exist any misrepresentation. The matter was presented to her by her husband on the basis that she should first sign the agreement, and "in the event I file for divorce, if she files for divorce ...," N.T., *supra,* at 83, R.R. at 43a, Wife could then take the already-signed agreement to an attorney. When Wife stated her concerns about the agreement after it had been returned several days following her signing it, she was told by Husband to not worry about it, that it would only be important if there was a divorce. There is nothing in the record to even suggest that Wife was contemplating a divorce at the time the agreement was signed. I would not conclude that these circumstances were free from an intentional misrepresentation by Husband utilized for the purpose of lulling Wife into believing that review by an attorney would not be necessary. Nor would I conclude, as does the Majority, that full and fair disclosure of the parties' statutory rights was made, given these uncontroverted facts.

Had Husband come to his daughter's residence and sold Wife goods or services worth $25 or more, she would have had three days in which to avoid that contract. Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–7 (1976). I would be reluctant to afford Wife less protection where, on these facts, she had first signed the agreement while principally concerned with the safety and welfare of her grandchildren and then made prompt protest on her first opportunity to examine the agreement more carefully. I would find both duress and misrepresentation on the particular facts presented here.

Finally, I agree with my colleagues that the petition for special relief must be granted. Therefore, Wife is entitled to all of her rights and remedies under the Divorce Code. The divorce complaint was filed by Husband on May 10, 1994. The Petition for Special Relief was filed by Wife on November 30, 1994. Husband's Petition for Bifurcation, filed September 11, 1995, was denied by the trial court on November 9, 1995 while this appeal was pending. No decree in divorce has been entered. I find nothing in the record to prevent Wife from pursuing any rights she might believe to be hers in the area of support or maintenance, alimony, alimony pendent lite, counsel fees, or costs and expenses. The Petition for Special Relief prayed that the Agreement dated and executed October 25, 1993, be declared a nullity, and that Wife be allowed to pursue all of her rights and remedies under the Divorce Code of 1990. In joining in my colleagues' determination to reverse the order of July 18, 1995 and remand, I also agree that the total relief sought by Wife be granted.