## Schappell v. Schappell

C.P. of Berks County, no. 1492-95 A.D.

*Cheryl A. Rowe,* for plaintiff.
*Charles F. Fitzpatrick,* for defendant.

P.W. SCHMEHL, *J.,* March 24, 1998—This matter is before the court on Ms. Schappell's, petitioner, petition for special relief in which she asserts that the postnuptial agreement is invalid because there was not adequate disclosure of marital assets. The petitioner alleges that the postnuptial agreement failed to make a full and fair disclosure of the marital assets and that she did not have sufficient knowledge of Mr. Schappell's, respondent, financial situation at the time the agreement was executed. At the hearing, however, the petitioner testified that she filed the petition for another reason which is discussed below.

The parties to this action married in September 1977 and divorced in August 1995. In February and March of 1995, the parties negotiated a postnuptial agreement that was executed on March 29, 1995. The parties arrived at the terms of the agreement by themselves, and the

respondent took the negotiated terms to Attorney Lynn Erickson who drafted the formal postnuptial agreement. Although the petitioner denies meeting in Attorney Erickson's office to review the details of the postnuptial agreement, the testimony of Attorney Erickson and the respondent indicates that a meeting was in fact held and that all the material terms in the agreement were addressed. Furthermore, the petitioner was advised on several occasions that she should retain her own legal counsel.

The agreement provided for the disposition of certain assets of the marital estate. It did not purport to list all of the assets, nor did it list the values of the assets. Specifically, the agreement did not refer to or specify the values of the respondent's pension plan, his interest in a computer business, nor his interest in rental properties owned by him and another person. Despite the absence of a full listing of every asset, the petitioner had, in fact, a working knowledge of all the assets of the parties.

The testimony at the hearing elicited that the petitioner knew about the respondent's computer business and real estate partnership, neither of which has succeeded in making any significant amount of money and that his computer company barely breaks even on a year-to-year basis. She also knew about the respondent's pension, and the respondent has not hidden the value of his pension from the petitioner. All along the petitioner had been informed of the formula to determine the value of the pension, and, in fact, such information was and is, by law, available to the public. The parties had even reviewed the pension payout arrangements on an occasional basis. On one occasion, the parties explored the opportunity of creating additional sources of revenue for their retirement because the pension

would be inadequate. The result was the opening of a joint IDS account. The petitioner had full and fair opportunity to deal with the IDS account and knew about the transactions in and out of the account over the years.

Also important is the fact that the petitioner kept the financial books and records for the family and even prepared monthly budgets on the family computer. Furthermore, she has a great deal of practical accounting experience and is currently in charge of bookkeeping for a factory operating in or about Hamburg, Pennsylvania. She controls receipts and disbursements and in her career has controlled other corporate accounts.

The postnuptial agreement also stated that the parties each made a full disclosure of their respective assets and obligations and that each was fully informed of the other's assets. In the agreement, the parties agree that it constitutes a "fair, equitable and complete settlement." At the hearing, the petitioner testified that she had been satisfied with the respondent's promises which related to the agreement but were nonetheless beyond the intended scope thereof. One such promise involved an alleged oral understanding which established in the children the right to the petitioner's "share of the assets." The petitioner is now fearful that the children will not receive their promised share of the marital assets proffered in this alleged "side" agreement.

When determining the validity of postnuptial agreements, the courts are to apply the same principles of law as are applied to antenuptial agreements. *Adams v. Adams,* 414 Pa. Super. 634, 637, 607 A.2d 1116, 1118 (1992). "[F]ull and fair disclosure of the financial positions of the parties is required" in order to have a valid postnuptial agreement. *Simeone v. Simeone,* 525 Pa. 392, 402, 581 A.2d 162, 167 (1990). The "disclosure

need not be exact, so long as it is 'full and fair.' " *Id.* at 403, 581 A.2d at 167. The adequacy of the disclosure is based on the facts and circumstances of each individual case. *Nigro v. Nigro,* 371 Pa. Super. 625, 632, 538 A.2d 910, 914 (1988). A presumption of full and fair disclosure arises if an agreement provides that such a disclosure has been made. *Simeone* at 403, 581 A.2d at 167. This presumption can be rebutted through an assertion of fraud or misrepresentation but only if proven by clear and convincing evidence. *Id.*

Normally, contracting parties are bound by their agreements regardless of whether the terms were read and fully understood and regardless of whether the agreements embodied reasonable or good bargains. *Simeone,* at 400, 581 A.2d at 165. Furthermore, failure to consult with independent legal counsel is not an adequate ground to declare an agreement void. *Id.* at 400-401, 581 A.2d at 166. If the parties viewed an agreement as reasonable at the time of its inception, they cannot later try to evade its terms by asserting unreasonableness. *Id.* at 401, 581 A.2d at 166.

Because the agreement between the petitioner and respondent states that full disclosure had been made, a presumption arises that such disclosure was in fact made and the petitioner has the burden of proving by clear and convincing evidence that such is not the case. Furthermore, the petitioner is unable to have the agreement declared void because of unreasonableness or her failure to consult with independent legal counsel. Because the petitioner was satisfied with the agreement when she executed it and because she failed to prove by clear and convincing evidence that the agreement was not based on full and fair disclosure, the court declares the postnuptial agreement to be valid and denies the petitioner's requested relief. Furthermore, the pe-

titioner's bringing the petition to protect her children's interests in her share of the assets arising out of a side agreement obviates her petition in that she is not arguing the unfairness of the postnuptial agreement.

Not only did the petitioner acknowledge full and fair disclosure of the respondent's assets and obligations and her rights under the law by signing the postnuptial agreement, Attorney Erickson reviewed the agreement and the petitioner's rights with the petitioner in her office. Although the agreement did not refer to or list the values of the respondent's pension plan, computer business or real estate partnership, the petitioner was more than merely aware of these assets. Nothing was hidden from the petitioner, and the failure to list these assets and their values in the postnuptial agreement is not sufficient to "obscure" the general financial resources of the respondent. As the events have played out, the respondent's computer and real estate business cash flow was and is minimal and not much to disclose. Perhaps the value of the real estate held by the real estate partnership should have been disclosed, but the petitioner did know of it and must have had some idea as to its value based on her tracking of the family's cash flow and other assets.

As for the pension, the petitioner must have known the approximate value otherwise she may never have agreed with the respondent to open a supplemental IDS account after their discussions concerning resources available for retirement. Furthermore, the respondent's interest in the IDS account was not hidden from the petitioner as it was a joint account and the petitioner had access to it. The petitioner's belief that she had no rights to the computer business, rental properties, or pension, although initiated by the respondent, does not make the disclosure of assets any less full or fair. The petitioner had an opportunity to take the agreement

and facts known to her to independent counsel for advice. There has to be a point in time where, given her access to his pension information, her background, and Attorney Erickson's warning, the petitioner has to accept responsibility for her failure to delve more carefully into the value of the marital estate.

The petitioner relies on the case of *Mormello v. Mormello,* 452 Pa. Super. 590, 682 A.2d 824 (1996) as a case of similar facts where the postnuptial agreement was declared to be invalid. In both cases, the husband was a police officer and the wife could not and did not involve herself in the husband's police duties. Involvement in police duties, however, has no bearing on knowing the income of a police officer. Furthermore, in *Mormello*, the wife had *no knowledge* of the husband's monthly pension payments or his gross salary from his current job. In the instant case, the petitioner knew the formula to determine the respondent's monthly pension payments and also had knowledge of the approximate value of the pension based on the parties' discussions regarding retirement. Furthermore, as the person who prepared the monthly household budget, the petitioner must have been aware of the respondent's salary in order to adequately budget the household income and expenses.

Another distinguishing feature of the *Mormello* case is that the property settlement agreement truly obscured the general financial resources of the parties. The only valuation found in the agreement was a $65,000 mortgage remaining on the marital home. The husband agreed to be responsible for the $888 per month mortgage payment. The wife, however, was receiving disability payments which paid $833.33 of the monthly mortgage payments, which meant that the husband was responsible for only $54.67, barely more than 6 percent of the monthly mortgage payment. Although the petitioner argues that such tactics are being used in the

instant case with respect to the IDS account, such is not the case. Pursuant to the postnuptial agreement, the petitioner received a $14,000 payment allegedly for her interest in the marital home and is also to receive another $10,000 in the near future. The petitioner argues that the $14,000 came from the parties' IDS account in which the petitioner already has a 50 percent interest anyway. When combining the equity in the home and the monies in the IDS account, however, the value of the assets taken together is between $47,000 and $50,000. Petitioner's receipt of a total of $24,000 is approximately 50 percent of the combined value of the IDS account and the equity in the marital home. Her failure to realize that the $14,000 came from the IDS account is not the result of the respondent's intent to obscure the parties' general financial resources. Furthermore, according to the petitioner's own testimony, what is left of her share of the assets is to be given to the parties' children per the terms of an oral understanding that was reached by the parties at or about the time of execution of the postnuptial agreement.

Although, perhaps, the "vagueness" of the agreement did not help to inform the petitioner of the financial situation of the parties, it did not actively attempt to obscure their situation. Full and fair disclosure need not be *in* the agreement, and the petitioner is an intelligent woman who displays knowledge of the parties' general financial resources.

Because it finds that there was full and fair disclosure of the parties' general financial resources, the court enters the following order:

## ORDER

And now, March 24, 1998, respondent's petition for special relief filed on December 5, 1997 is dismissed.