## Pouleson v. Pouleson

C.P. of Berks County, no. 02-1395.

*Eugene C. LaManna,* for plaintiff.
*Eric C. Diggan,* for defendant.

GRIM, *P.J.,* February 14, 2005—This case is before the court on plaintiff's petition to open and/or strike di-

vorce decree and defendant's response and motion for sanctions. The following are the pertinent facts.

The parties were married for approximately 12 years and have two children. Plaintiff, Mary Elizabeth Pouleson (Wife), vacated the marital residence upon the parties' separation in October 2001. Shortly after their separation, both parties consulted attorneys and attempted to reach an agreement to address the marital issues. Although several drafts of agreements were made, none were executed.

In the fall of 2003 the parties filed for joint bankruptcy in the Eastern District of Pennsylvania. Each party provided the attorney for the bankruptcy with the marital assets and debts in his or her possession. Defendant, Christoper R. Pouleson (Husband), listed, inter alia, a defined benefit plan and a 401(k) plan from his employer.

In January 2004, the parties discussed the execution of a postnuptial agreement. Husband offered what he considered was a fair proposal. Wife accepted the proposal. He told her that she could save money by firing her attorney. Consequently, Wife terminated her attorney's services. She then signed the agreement drafted by Husband's attorney.

Wife contends that she signed the agreement because Husband intimidated her. She was afraid that if she did not acquiesce to Husband's proposals he would make it difficult for her to see the children. The parties were divorced on February 6, 2004, and the divorce decree was incorporated into the agreement.

Pursuant to the agreement Wife received 50 percent of Husband's 401(k) plan. Wife asserts that until recently

she did not know that Husband had a defined benefit plan. Husband maintains that, although he gave the information about his two retirement plans to the bankruptcy attorney, he assumed that they were one and the same.

Wife now wants a share of Husband's defined benefit plan. She requests the court to open the divorce decree to address the issue of Husband's defined benefit plan.

23 Pa.C.S. §3332 governs the opening or vacating of a divorce decree:

*"Section 3332 Opening or vacating decrees*

"A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. §5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case."

Since Wife is alleging extrinsic fraud, the divorce decree may be opened because it is within five years after the entry of the decree.

In order to void a contract due to a fraudulent misrepresentation, the party alleging fraud must prove by clear and convincing evidence:

(1) a representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and

(6) resulting injury proximately caused by reliance.

Whether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false, for purposes of determining whether the agreement can be voided based on a fraudulent misrepresentation. Where the means of obtaining the information in question were not equal, the representations of the person believed to possess superior information may be relied upon. *Porreco v. Porreco,* 571 Pa. 61, 811 A.2d 566 (2002).

In the case sub judice, there was a false representation made that was material to the entry of the agreement, *i.e.,* that Husband had only a 401(k) plan through his employer. It is unclear whether Husband provided the information about the defined benefit plan to his divorce attorney. Wife was certainly justified in relying on the misrepresentation since the information was only in Husband's possession. Wife did not have an attorney at the time of the execution of the agreement and there is no indication that a defined benefit plan was discussed in the prior drafts of agreements by the attorneys. For purposes of marital agreements,

full disclosure of the parties' financial resources is a mandatory requirement. *Stoner v. Stoner,* 572 Pa. 665, 819 A.2d 529 (2003). As a result of relying on Husband's misrepresentation, Wife was injured by not receiving a share of a marital asset. For the above reasons, the court finds that Wife is entitled to open the decree to divide equitably the defined benefit plan.

Assuming agruendo that Wife did not prove by a preponderance of the evidence that Husband intentionally misled her into relying on his representation, the court would still find that the decree should be opened.

The penultimate paragraph in the recitals clause of the agreement reads as follows:

"By signing this agreement both parties hereby acknowledge that they agree and understand that they have been advised that they have a right to an independent appraisal of all marital assets, copies of all bank statements and or other financial statements and that the misstatement of the value of any asset or the concealment of any assets may effect this agreement and this agreement may be subject to reopening by either party as a result of the failure of either party to disclose the true value of the marital assets in accordance with the decision of the Superior Court in the case of *Mormello v. Mormello,* 452 Pa. Super. 590, 682 A.2d 824 (1996)."

A basic tenet of contract law is that when the language of a contract is clear and unambiguous its meaning must be determined by an examination of the content of the agreement itself. The court must construe the agreement only as written and may not modify the plain meaning under the guise of interpretation. *Little v. Little,* 441 Pa. Super. 185, 657 A.2d 12 (1995).

The plain meaning of the agreement is that the misstatement of the value of any asset or the concealment of any assets may impact the agreement. For whatever the reason, Husband's defined pension plan was concealed from Wife. This is a major asset of the marriage and impacts on Wife's rights. In *Mormello,* the Superior Court held that a postnuptial property settlement agreement was invalid because it did not contain a full and fair disclosure of the value of the marital estate. In that case, the wife had no knowledge as to the husband's monthly pension payments or his gross salary, the agreement failed to state the value of the husband's pension and the wife's disability payments, and the valuation of the amount remaining on the mortgage on the house did not accurately reflect the husband's monetary obligation to the wife. Whether adequate disclosure has been made will depend on the facts and circumstances of individual cases.

The court finds that, in the instant case, adequate disclosure was not made to Wife. In accordance with the foregoing opinion, the court enters the following order.

### ORDER

And now, after hearing argument and consideration of the briefs, the court opens the divorce decree dated February 6, 2004, and amends the postnuptial agreement dated January 25, 2004, as follows:

(1) Defendant, Christopher R. Pouleson (Husband), shall pay to plaintiff, Mary Elizabeth Pouleson (Wife), the sum of $3,500 payable as follows:

(a) $1,000 within 30 days of the receipt of this order.

(b) The balance of $2,500 to be payable at the rate of $500 per month.

(2) Wife shall receive an amount equal to 60 percent of the present value of Husband's monthly payments from Husband's State Farm Insurance Companies defined benefit plan. The money shall be distributed by QDRO to Wife. Wife shall prepare the QDRO and the parties shall cooperate in the execution and filing of the QDRO.

(3) The parties shall share equally the costs associated with the drafting of the QDRO and the payment of all taxes, penalties, and interest. Husband shall pay his share of the costs within 30 days from the completion of the QDRO.

(4) Interest on any unpaid balances owed by Husband shall accrue at 8 percent per annum from April 1, 2005, until paid in full.

(5) Both parties shall take all actions necessary to accomplish this transfer without adverse tax effect or realization of income at the time of the transfer.

(6) The balance of Husband's plan shall be and remain the sole and exclusive property of Husband.

(7) All other provisions of the postnuptial agreement shall remain in full force and effect.

(8) Defendant's motion for sanctions is denied.