J-S18031-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| BERNARD GIGLI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRENDA GIGLI, | : | |
| | : | |
| Appellant | : | No. 1227 MDA 2015 |

Appeal from the Order Entered March 3, 2014
in the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-1024-2013

BEFORE:     BOWES, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED APRIL 13, 2016**

Following the entry of a divorce decree on June 25, 2015, Brenda Gigli (Wife) appeals from the now-final March 3, 2014 order that denied her petition for special relief in which she sought a declaration that the Property Settlement Agreement (PSA) signed by Wife and Bernard Gigli (Husband) was null and void.[1]  We affirm.

Husband and Wife married in 1998 and separated in 2009.  Husband filed a complaint in 2013 in which he sought divorce, equitable distribution, and custody of the parties' four children.  On December 9, 2013, Husband

---

[1] Wife's previous appeal from the March 3, 2014 order was quashed as interlocutory by this Court's order of June 5, 2014.  ***See Sneeringer v. Sneeringer***, 876 A.2d 1036, 1039 (Pa. Super. 2005) ("[B]ecause no decree of divorce has been entered in the present case, we find that the denial of Wife's petition to invalidate the parties' marital settlement agreement is not a final order.").

*Retired Senior Judge assigned to the Superior Court.

filed the PSA, which was signed by both Husband and Wife and witnessed by a notary public on December 3, 2013.

On December 26, 2013, Wife filed a petition for special relief, seeking to invalidate the PSA based upon claims of duress, mistake, lack of capacity, lack of adequate disclosure, unconscionability, and lack of counsel. Petition, 12/26/2013, at ¶ 8. Husband filed an answer, and the trial court scheduled a hearing before a special master. On March 3, 2014, the trial court entered an order, "upon recommendation of the Master,"[2] denying and dismissing Wife's petition for special relief. Order, 3/3/2014, at 5 (pages unnumbered).

The case proceeded to the June 25, 2015 entry of the divorce decree. The PSA was incorporated in, but not merged into, the divorce decree. Wife timely filed a notice of appeal referencing the March 3, 2013 order. Thereafter, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) directing this Court to its March 3, 2013 order for the reasoning for its determination.

Wife presents this Court with the following question on appeal:

> Whether the trial court committed an abuse of discretion or error of law by dismissing [Wife's] petition for special relief seeking to have the [PSA] invalidated by finding: (1) [Wife] did not lack capacity; (2) [Wife] was not under duress; and (3) [Husband] provided [Wife] with a full and fair disclosure of all assets.

---

[2] Although the trial court apparently had access to the master's findings and recommendation, neither the docket nor the certified record transmitted to this Court contains a report or recommendation of the special master who presided over the February 18, 2014 hearing on Wife's petition.

Wife's Brief at 2 (unnecessary capitalization omitted).

Our standard of review in examining the trial court's ruling is whether the trial court abused its discretion or committed an error of law. **Colonna v. Colonna**, 791 A.2d 353, 355 (Pa. Super. 2001). "[I]n determining issues of credibility the master's findings must be given the fullest consideration for it was the [m]aster who observed and heard the testimony and demeanor of various witnesses." **Anderson v. Anderson**, 822 A.2d 824, 830 (Pa. Super. 2003). We consider whether the trial court abused its discretion in adopting the master's findings. **Id.**

"An abuse of discretion is not lightly found," and requires a showing "that the trial court misapplied the law or failed to follow proper legal procedures." **Holz v. Holz**, 850 A.2d 751, 757 (Pa. Super. 2004) (citation and internal quotation marks omitted). "As in all matters on appeal, the appellant bears the burden of persuasion to demonstrate his [or her] entitlement to the relief he [or she] requests." **Ruthrauff, Inc. v. Ravin, Inc.**, 914 A.2d 880, 893 (Pa. Super. 2006) (internal quotation marks and citation omitted).

With these standards in mind, we turn to the applicable law. "[P]roperty settlement agreements are presumed to be valid and binding upon the parties." **Crispo v. Crispo**, 909 A.2d 308, 313 (Pa. Super. 2006). When a PSA is not merged into a divorce decree, "it stands as a separate

- 3 -

contract, is subject to the law governing contracts and is to be reviewed as any other contract." ***Id.*** at 312-13.

> The standard of enforceability of a contractual agreement is … clear: [a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements.  As such, a trial court may interpret a property settlement agreement as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake.

***Id.*** at 313 (citations and internal quotation marks omitted).  Nor may this Court examine whether the parties "had attained informed understandings of the rights they were surrendering" absent proof of material misrepresentation or fraud.  ***Colonna***, 791 A.2d at 357 (citation and internal quotation marks omitted).  Further, "in the absence of fraud, the failure to read a contract before signing it is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract; it is considered supine negligence."  ***In re Estate of Boardman***, 80 A.3d 820, 823 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Wife first claims that the trial court erred in finding that she did not lack capacity to enter into the PSA on December 3, 2013.  Wife's Brief at 7.

"It has long been the law of Pennsylvania that the evidence required to set aside a transaction on the basis of mental incompetency must be clear, precise and convincing."  ***Elliott v. Clawson***, 204 A.2d 272, 273 (Pa. 1964) (internal quotation marks omitted).  "Mere mental weakness, if it does not amount to inability to comprehend the contract, and is unaccompanied by

- 4 -

evidence of imposition or undue influence, is insufficient to set aside a contract." ***Estate of McGovern v. Com. State Employees' Ret. Bd.***, 517 A.2d 523, 526 (Pa. 1986) (overruled in part on other grounds). "[W]here mental competency is at issue, the real question is the condition of the person at the very time he [or she] executed the instrument…." ***Sobel v. Sobel***, 254 A.2d 649, 651 (Pa. 1969).

In support of her claim, Wife points to her testimony that the medications she takes for "anxiety and bipolar depression" make her "feel woozy and dizzy, in a cloud, forgetful and fuzzy headed, kind of out there, and sick to her stomach." ***Id.*** at 8 (internal quotation marks omitted). Thus, she argues, "[i]t is clear, given [Wife's] testimony that she was suffering from the side effects of the prescription medication at the time the [PSA] was signed, that she lacked the capacity necessary to enter into the contractual agreement with [Husband]." ***Id.*** at 9.

The trial court adopted the master's rejection of Wife's testimony, finding that she "presented no credible evidence" that she was "unable to understand what was going on" at the time she signed the PSA. Rather, the trial court found that Husband and the notary who witnessed Wife sign the PSA testified credibly that Wife exhibited no signs of unusual behavior or being upset, Order, 3/3/2014, at 2 (pages unnumbered); rather Wife "seemed coherent and normal." ***Id.*** at 5.

The record supports the trial court's findings,[3] and the credibility determinations will not be disturbed by this Court. ***Busse v. Busse***, 921 A.2d 1248, 1256 (Pa. Super. 2007) ("We do not reverse credibility determinations on appeal."). Accordingly, Wife is not entitled to relief based upon her first issue.

Wife next contends that the trial court erred in finding that she was not under duress at the time she signed the PSA. Wife's Brief at 9.

Our Supreme Court has defined duress as:

> [T]hat degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness…. The quality of firmness is assumed to exist in every person competent to contract, unless it appears that by reason of old age or other sufficient cause he is weak or infirm…. Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness…. Moreover, in the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel….

***Degenhardt v. Dillon Co.***, 669 A.2d 946, 950 (Pa. 1996) (quoting ***Carrier v. William Penn Broadcasting Co.***, 233 A.2d 519, 521 (Pa. 1967)).

Wife claims that Husband told her that the document she was signing related to custody of their children "and that if she refused to sign said document she would never see her children again." Wife's Brief at 10. Wife additionally makes a duress argument similar to the one she presented for mental incapacity:

---

[3] ***See*** N.T. 2/18/2014, at 7-8, 50-51.

[Wife] clearly lacks the mental firmness of an ordinary person as a direct result of all of the medications she must take on a daily basis. [Wife's] testimony supports the fact that her medications prevent her from thinking clearly, and, as a direct result, impact her comprehension of ordinary matters and her memory. While [Wife] is capable of understanding and remembering basic concepts and daily occurrences, the same cannot be said for complex concepts such as the instant [PSA]. Admittedly, [Wife] was not threatened with bodily harm; however, she was not free to consult with counsel either. [Wife] was never told that she could have the [PSA] reviewed by an attorney. Given her long history of mental health issues resulting in her diminished capacity, not informing [Wife] of her right to consult with an attorney had the same effect as preventing her from freely doing so. Since [Wife] was already in a weakened mental state there is no way she would have been able to comprehend the magnitude of the rights she was giving up by signing the [PSA]. As such, the [PSA] should be invalidated on the ground that [Wife] was under duress at the time she executed the [PSA].

Appellant's Brief at 11.

The trial court adopted the master's determination that Husband's testimony was credible and Wife's was not, and found that Wife: made no efforts to exercise the custody rights she had been awarded; knew the document was related to her divorce; and did not allege any danger, restraint, or other threats. Order, 3/3/2014, at 3 (pages unnumbered).

Again, the record supports the trial court's factual conclusions and we will not second-guess credibility findings. Before Wife signed the PSA, she failed to show up for the custody conciliation or the custody trial, and the court entered an order on November 25, 2013, awarding primary physical custody of the children to Husband, with Wife to have "supervised partial

physical custody" "on an open and reasonable basis by mutual assent." Order, 11/25/2013, at 2 (pages unnumbered). At the time she signed the PSA, Wife had not seen the children in approximately one year, although Husband often encouraged Wife to see them and Wife "says she'll come, but she never shows up." N.T., 2/18/2014, at 51. The record simply does not support Wife's claim that the children were held hostage to procure Wife's signature.

Wife's failure to consult with counsel prior to executing the PSA does not *per se* provide a basis to invalidate it. **Simeone v. Simeone**, 581 A.2d 162, 166 (Pa. 1990) ("To impose a *per se* requirement that parties entering a prenuptial agreement must obtain independent legal counsel would be contrary to traditional principles of contract law, and would constitute a paternalistic and unwarranted interference with the parties' freedom to enter contracts.").[4]

Further, there is no evidence that Wife was prevented from having an attorney review the agreement. Wife showed up before the notary as she had arranged with Husband, and Husband talked with Wife about the contents of the document, including provisions that each would keep his or her respective personal property and retirement accounts. **Id.** at 49.

---

[4] "**Simeone** involved a prenuptial, rather than a postnuptial, agreement. However, the principles applicable to antenuptial agreements are equally applicable to postnuptial agreements, although the circumstances may slightly differ." **Stoner v. Stoner**, 819 A.2d 529, 533 (Pa. 2003).

Husband presented Wife with the PSA and advised her to read it, and Wife looked through it and signed it. *Id.* at 50. Nothing in the record suggests that Wife was unable to take the document to an attorney before signing it. Although Wife argues, without offering authority in support, that Husband neglected to fulfill some duty to advise her of her right to have counsel review it, her factual premise is belied by the record. The PSA provides that "Wife acknowledges that she has been advised to obtain counsel…" and that she "is entering into [the PSA] freely and voluntarily after having the opportunity to receive such advice…." PSA, 12/9/2013, at 5. As such, Wife has failed to convince us that her duress argument entitles her to relief. *Accord Lugg v. Lugg*, 64 A.3d 1109, 1113-14 (Pa. Super. 2013) (affirming trial court's determination that agreement was not product of duress where "Lugg never claimed she was subject to any level of force or threat of force[ and there was] nothing in the record to show Husband threatened her in any way to prevent her from contacting her lawyer.").

Finally, Wife argues that the trial court should have deemed the PSA invalid because Husband failed to make a full disclosure of all of his assets to Wife before she signed it. Wife's Brief at 11.

A postnuptial settlement agreement is valid if each party had "a full and fair disclosure of the other's worth." *Nitkiewicz v. Nitkiewicz*, 508, 535 A.2d 664, 665 (Pa. Super. 1988). *See also Stoner*, 819 A.2d at 533

("[W]e reaffirm the principle … that full disclosure of the parties' financial resources is a mandatory requirement.").

> It is well settled that this disclosure need not be exact, so long as it is full and fair. In essence therefore, the duty of disclosure under these circumstances is consistent with traditional principles of contract law…. If an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence.

*Sabad v. Fessenden*, 825 A.2d 682, 691 (Pa. Super. 2003) (quoting *Mormello v. Mormello*, 682 A.2d 824, 827 (Pa. Super. 1996), *disapproved of on other grounds by Stoner*).

The PSA in the instant case contains the following separately-numbered provision under the heading "FULL DISCLOSURE."

> The parties warrant and represent that, prior to this Agreement, they have made a full disclosure to each other of all assets and debts in existence as of the fate of their separation, and this Agreement is based upon such disclosure. It is expressly understood that in the event that it is later discovered that either party failed to disclose any asset or debt owned or owed at the time of separation, this matter may be re-opened and the innocent party may seek equitable distribution [of] all marital assets, as well as counsel fees and costs incurred as a result of the party's failure to fully disclose.

PSA, 12/9/2013, at 21.

Wife argues that the PSA should be invalidated because Husband failed to disclose fully his assets. Specifically, Wife claims that Husband failed to disclose his pension value, the amount in his 401(k), and $10,000 he owns in the stock of his employer, UPS. Wife's Brief at 14. In support, Wife

points to her testimony that Husband handled the finances during their marriage, that she and Husband never talked about assets, and that she had no idea what assets Husband had when she signed the agreement. *Id.* at 13 (citing N.T., 2/18/2014, at 26-27).

The trial court once again deferred to the master in not crediting Wife's testimony but instead believing Husband:

> In the agreement the parties acknowledge they made full disclosure. Wife is a college graduate and is intelligent. Husband testified credibly that Wife handled the family finances. Wife was aware Husband worked, how much money he made, what employee benefits he had and that the couple had a home. The agreement specifically addresses marital property such as residence on Page 9, motor vehicles on Page 10, financial and retirement accounts on Page 11, personal property on Page 12, support, alimony and alimony *pendente lite* and counsel fees and costs on Page 13 and debts on Pages 14 and 15.

Order, 3/3/2013, at 4 (pages unnumbered; italics added).

Once more, the trial court's factual findings are supported by the record and this Court will not disturb credibility determinations. Husband testified that Wife handled the finances while they were together, and that he discussed with her that each of them would keep his or her "respective retirement and things like that[.]" N.T., 2/18/2013, at 47, 49. With no evidence of record that Husband misrepresented or concealed the value of these disclosed assets, Wife has failed to rebut the presumption that full disclosure was made in this case. *See Paroly v. Paroly*, 876 A.2d 1061, 1069 (Pa. Super. 2005) ("[W]here the circumstances indicate that a spouse

- 11 -

has knowledge of the general value of the couple's assets, an agreement will be upheld, especially where, as here, the agreement recites that full and fair disclosure was made."). Therefore, Wife has failed to establish that the trial court erred or abused its discretion in holding that the PSA is supported by valid disclosure.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2016