**Ted W. PAROLY, Appellee**

v.

**Sandra J. PAROLY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 2005.
Filed June 10, 2005.

John D. Conroy, Doylestown, for appellant.

Marcel L. Groen, Philadelphia, for appellee.

Before: BOWES and McCAFFERY, JJ., and McEWEN, P.J.E.

OPINION BY BOWES, J.:

¶ 1 Sandra J. Paroly ("Wife") has appealed the trial court's decision to uphold a marital settlement agreement that failed to delineate the value of a business owned by Ted W. Paroly ("Husband"), but did recite that disclosure of its value had been made. The record does not sustain a finding that the trial court abused its discretion in upholding the agreement; therefore, we affirm.

¶ 2 The record indicates the following. Wife and Husband married on April 4, 1981, and although separated in 1988, the parties reconciled. Husband instituted the present divorce action on January 4, 1999, and on February 23, 2001, the court granted a divorce; the terms of an October 16, 2000 divorce settlement agreement were incorporated into the decree. On April 3, 2002, Wife filed a petition to set aside the October 16, 2001 agreement. The trial court conducted three hearings on the petition, and on February 13, 2004, denied Wife's petition. This appeal followed.

¶ 3 Wife contends that the trial court erred in upholding the agreement. Her central allegation is that the agreement did not contain full and fair disclosure of the parties' assets because the value of the marital estate was not specifically delineated. She claims that Husband misinformed her that the value of his business, Rampart Security Systems, Inc. t/a Paroly–Rampart Security Systems ("Rampart"), was $145,000; however, six months after the agreement was executed, he purportedly sold that business for $560,000.

¶ 4 We first outline our standard of review:

"The determination of marital property rights through prenuptial, postnuptial and settlement agreements has long been permitted, and even encouraged." *Sabad [v. Fessenden]*, 825 A.2d [682,] 686 [ (Pa.Super.2003) ] (quoting *Laudig v. Laudig*, 425 Pa.Super. 228, 624 A.2d 651, 653 (1993)). · Both prenuptial and post-nuptial agreements are contracts and are governed by contract law. *Laudig, supra.* Moreover, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. *See Busch v. Busch*, 732 A.2d 1274, 1276 (Pa.Super.1999), *appeal denied*, 563 Pa. 681, 760 A.2d 850 (2000) (citing *Laudig, supra* ). An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. *Paulone v. Paulone*, 437 Pa.Super. 130, 649 A.2d 691 (1994). We will not usurp the trial court's factfinding function. *Laudig, supra.*

*Holz v. Holz*, 850 A.2d 751, 757 (Pa.Super.2004). Furthermore, the principles applicable to prenuptial agreements are "equally applicable" to postnuptial agreements. *Stoner v. Stoner*, 572 Pa. 665, 672 n. 5, 819 A.2d 529, 533 n. 5 (2003).

¶ 5 The relevant portions of the agreement, which were drafted by Attorney Edward R. Sutton on behalf of both parties, are as follows:

Each party agrees and believes that this Agreement is under all circumstances fair and equitable and that it is being entered into freely and voluntarily and that the execution of this Agreement is not the result of any duress or undue influence and it is not the result of any collusion or improper of illegal Agreement or Agreements. The parties do hereby warrant, represent, declare and do acknowledge and agree that each is and has been fully and completely informed of and is familiar with and cognizant of the wealth, real and/or personal property, estate and assets, earnings

and income, income tax circumstances and situation of the other and that each has made a full and complete disclosure to the other of his or her entire assets and liabilities, and further enumeration or statement thereof in this Agreement is hereby specifically waived, and the parties do not wish to make or append hereto any further covenants or details of assets or liabilities and agree for themselves and their heirs, executors, administrators and assigns in any action or contention, direct or indirect, absence or lack of full disclosure or that there was any absence or lack of full, opportunity to engage in independent representation.

Agreement, 10/16/00, at III(C) (emphasis added). The agreement also comprehensively dealt with the parties' assets, including bank accounts, cars, home, retirement accounts, personal property, and the stock of Rampart. Under the agreement, Wife received $70,000, and Husband received the home and Rampart. Wife acknowledged that Husband had to refinance the house in order to make the $70,000 payment. Wife, a participant in the Princeton University TIAA/CREF Retirement Plan, received her interest in that account as well as any other retirement benefits that she owned. The savings account was divided equally, and Wife received a car titled in Rampart's name.

¶ 6 The documentary evidence produced at trial substantiated that Mr. Sutton prepared the agreement at the direction of the parties, who affirmatively informed him that they did not want separate legal representation and who had negotiated the financial arrangements themselves. In addition, Mr. Sutton was assured by Wife that she was aware of the parties' financial situation, including the value of Rampart.

¶ 7 The trial court made various factual findings and credibility determinations in rendering its ruling, which we summarize as follows. In 1977, Husband purchased Rampart, a security alarm company, where Wife was an employee. Wife continued her employment at Rampart after the parties' 1981 marriage and left in 1988, after their first separation, when she took a full time job in Princeton, New Jersey. While working at Rampart, Wife essentially was the office manager and "was responsible for [a]ccounts payable, accounts receivable, she wrote all checks, did all deposits, did billing, did customer service work." N.T., 6/16/03, at 23. In 1988, after Wife left Rampart's employment, she continued to execute Rampart's tax returns in her capacity as its corporate secretary. When the parties divorced, the estimated lump sum cash value of the business was between $125,000 and $150,000. Husband testified that he told Wife of the business's value during the divorce process in 2000. When the agreement was executed, Wife was earning $38,000 and Husband was earning $70,000 from Rampart.

¶ 8 Approximately six months after the divorce, on August 27, 2001, Husband entered into an asset purchase agreement with Franklin Security System, Inc. ("Franklin") to sell Rampart for $560,000. This amount, rather than being paid directly in a lump sum, was paid in installments which were the subject of negotiation. Under this installment agreement, Husband, rather than separate immediately from Rampart, agreed to serve as a consultant to Franklin for eight years, when he would reach sixty-five years of age, for an annual salary of $70,000. The $70,000 yearly figure for eight years resulted in a purchase price of $560,000.

¶ 9 At the hearings, Mr. Sutton testified that he made it very clear to the parties that his only involvement in drafting their property settlement agreement was limited to functioning as a scrivener. Mr. Sut-

ton stated that he sent correspondence to the parties requesting that they carefully review and mark changes to the agreement and informing the parties that they had the "absolute right to secure independent legal counsel." *Id.* at 109.

¶ 10 Wife acknowledged during her testimony that she was employed by Rampart prior to her husband's purchase of this company in 1977, and after they married, she continued to work at that business. With regard to her responsibilities, she stated that her duties involved "[a]nswering the phone, filing, scheduling appointments for service, ma[king] deposits, help[ing] with monthly billing." N.T., 7/23/03, at 8. She admittedly "ran the office" and characterized her employment responsibilities on her subsequent resume as follows:

> Acted on behalf of the President [Husband] with regard to customer contracts, public relations, and correspondence. Handled all aspects of bookkeeping, which included accounts payable, accounts receivable, payroll and expense accounts. Duties included the handling of confidential information in the uploading, downloading of security system program data. Was responsible for the computerization and administration of accounts payable, accounts receivable, control systems and the complete customer database and service order system. Became familiar with . . . industry-specific software.

*Id.* at 45. Wife acknowledged that she executed the annual tax returns for Rampart from 1988 to 2000, and stated that, prior to the divorce, she handled the parties' personal finances. While Wife testified that she was unaware of Rampart's value between 1988 and 2000, the trial court specifically found this "testimony less than credible and inconsistent with the evidentiary record." Trial Court Opinion, 5/25/04, at 9. Wife also maintained that she had no input into the terms of the October 16, 2000 property settlement agreement. The trial court observed that this testimony was refuted both by Mr. Sutton's testimony and by a draft of the agreement to which Wife had made changes.

¶ 11 At the July 23, 2003 hearing, Husband testified that Wife was aware of Rampart's value and that she participated in the drafting process of property settlement agreement. The trial court specifically credited his testimony, stating "This Court found this testimony to be especially credible, consistent with the record, and corroborated by the testimony of Edward Sutton, Esquire, and the documents and exhibits introduced into evidence." *Id.* at 10.

¶ 12 We begin our analysis with the seminal decision of *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162 (1990), wherein our Supreme Court analyzed the enforceability of a prenuptial agreement and clarified the standards for determining the validity of marital settlement agreements generally. Under *Simeone*, we are not permitted to review the reasonableness of a marital settlement agreement to determine its validity, and the fact that the parties did not have separate representation is not relevant. That case abolished prior, paternalistic approaches to enforcing such agreements and announced, "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Id.* at 400, 581 A.2d at 165.

¶ 13 The *Simeone* Court reaffirmed the "longstanding principle that a full and fair disclosure of the financial positions of the parties is required. Absent this disclosure, a material misrepresentation in the inducement for entering a prenuptial agreement may be asserted." *Id.* at 402, 581 A.2d at 167. Directly applicable herein is the Supreme Court's admonishment,

"If an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence." *Id.* at 402, 581 A.2d at 167.

■■■■ ¶ 14 It also is important to bear in mind that "[w]hether adequate disclosure has been made will depend on the facts and circumstances of individual cases." *Mormello v. Mormello,* 452 Pa.Super. 590, 682 A.2d 824, 827 (1996).[1] Finally, as the language in *Simeone* clearly indicates, an agreement is valid even if it does not contain financial disclosure itself and can be upheld if it merely recites that such disclosure has been made. *In re Estate of Hartman,* 399 Pa.Super. 386, 582 A.2d 648 (1990) (marital settlement agreement not invalid because it did not contain parties' respective financial disclosure as it stated that disclosure was made and fact that such disclosure was made was affirmed by testimony of scrivener).

¶ 15 We recently applied these principles in *Sabad v. Fessenden,* 825 A.2d 682 (Pa.Super.2003), which involved an issue bearing marked similarity to the one presented herein. In *Sabad,* the husband asserted that a prenuptial agreement did not provide full and fair disclosure of the parties' assets. The agreement therein provided that each party owned individual property and that the nature and extent of each individual's property had been disclosed to the other. We held that the husband was bound by the disclosure language and that he had failed to rebut the presumption of full disclosure by clear and convincing evidence.

■■■■ ¶ 16 Indeed, when a spouse is fully engaged in the couple's financial affairs and is familiar with a business owned by the other spouse, we will uphold an agreement even when it contains neither disclosure nor an affirmation that disclosure was made. *Adams v. Adams,* 414 Pa.Super. 634, 607 A.2d 1116 (1992). In *Adams,* the wife claimed an agreement was invalid because it did not contain any disclosure of the value of the parties' assets. As in this case, the wife in *Adams* worked as a bookkeeper in her husband's business until ten years prior to the execution of the agreement. After leaving the business, she began work at a local university, and she signed the marital settlement agreement without seeking separate legal representation.

¶ 17 The wife therein argued that the agreement was invalid because it failed to set forth a full and fair disclosure of the parties' worth and unfairly allocated to the husband the majority of their assets, including her husband's business. We rejected that position. Based on the wife's earlier involvement in her husband's business and her knowledge of their general financial resources, we upheld the trial court's decision upholding the language regarding full and fair disclosure. *Accord Nigro v. Nigro,* 371 Pa.Super. 625, 538 A.2d 910 (1988).

¶ 18 On the other hand, in *Ebersole v. Ebersole,* 713 A.2d 103 (Pa.Super.1998),[2] which is relied upon by Wife, the agreement did not contain a recitation that full and fair disclosure had been made, did not

---

**1.** *Mormello* was overruled on other grounds in *Stoner v. Stoner,* 572 Pa. 665, 819 A.2d 529 (2003).

**2.** *Ebersole* was overruled by *Stoner v. Stoner,* 572 Pa. 665, 819 A.2d 529 (2003), but only to the extent that *Ebersole* held that the statutory rights that a spouse is relinquishing have to be disclosed in a marital settlement agreement.

refer to property values, and did not enumerate the assets held by the couple. The question on appeal was whether the availability of financial records is sufficient to satisfy the requirement of full and fair disclosure of marital assets. We concluded that the availability of such records, standing alone, was insufficient. *See also Mormello, supra* (contrary to agreement's language that full disclosure was made, evidence established Wife had no knowledge of value of asset forming vast majority of marital estate's worth).

¶ 19 Similarly, in *Hess v. Hess*, 397 Pa.Super. 395, 580 A.2d 357 (1990), a husband and wife entered into a property settlement agreement. The parties owned land that the agreement stated was worth $45,000 but the husband knew he was going to sell it for $800,000. Wife brought an action alleging both fraud and breach of contract and prevailed. We upheld the jury's conclusion that the agreement had been obtained through the use of fraud.

¶ 20 Distilled, this case law provides that where the circumstances indicate that a spouse has knowledge of the general value of the couple's assets, an agreement will be upheld, especially where, as here, the agreement recites that full and fair disclosure was made. Under the facts and circumstances of this case, we cannot view the trial court's decision to validate the agreement as an abuse of discretion. This agreement, like those enforced in *Estate of Hartman, supra*, and *Sabad, supra*, recited that disclosure was made. Furthermore, Mr. Sutton testified that Wife was aware of Rampart's value and personally indicated to him that she was aware of the value of the various marital assets.

¶ 21 Wife's knowledge of Rampart's value is further confirmed by these facts. First, Wife was a knowledgeable working businesswoman. Second, Wife was intimately involved in Rampart's operations until 1988, when she started working for Princeton University. Third, after 1988, she continued to execute the corporate income tax returns for Rampart. Wife attempts to minimize the import of this latter fact by explaining that she signed the corporate tax returns in a ministerial capacity as corporate secretary. Nevertheless, she had knowledge of the income earned by Rampart for federal tax purposes for all relevant years. Her early participation in Husband's business and her general knowledge of Rampart's financial picture through her execution of its corporate returns after 1988 supports the trial court's conclusion that the presumption of full and fair disclosure was not rebutted by clear and convincing evidence. Indeed, these facts render this case indistinguishable from *Adams* and *Nigro*. Thus, we uphold the trial court's conclusion that Wife failed to establish by clear and convincing evidence that, contrary to the language in the agreement, she was not aware of Rampart's worth.

¶ 22 Wife raises fourteen specific challenges in this appeal. First, she asserts that "Full and fair disclosure requires, *inter alia*, a reasonable estimate of the value of assets and the initial focus in all cases should be the agreement itself." Appellant's brief at 22–23. In this section of her brief, Wife references *Hess, Ebersole*, and *Mormello*. We find unconvincing Wife's attempts to equate this case to *Ebersole*. In *Ebersole*, the agreement did not recite that disclosure was made, and contained, unlike the agreement herein, no review of the marital assets at all. We also reject Wife's attempt to invoke *Hess* because Wife did not establish the existence of an affirmative representation of value made under circumstances where it was beyond question that the representation was knowingly false by a significant amount.

In this case, the purchase price reflected both payment for future services and the value of the business. Finally, in *Mormello,* the facts established a total lack of knowledge on the spouse's part of the financial picture of the couple. As noted above, that is not the case herein.

¶ 23 Wife also challenges the trial court's factual finding that she was responsible for the couple's personal finances, noting that she relinquished that chore to Husband once he purchased computer software called Quicken in 1988. However, that factual finding did not form a significant underpinning for the trial court's decision to uphold the agreement.

¶ 24 Similarly, Wife claims lack of record support for the trial court's finding that Wife was "involved in the business at the time of the parties' agreement." Appellant's brief at 42. The trial court's specific findings in that regard were that Wife was Rampart's corporate secretary after 1988 and continued to sign the corporate tax returns. The trial court was well aware that Wife had a full time job with Princeton University after 1988 and was no longer integrally involved in its day-to-day operations. There was no error in this respect.

¶ 25 In addition, Wife contends that *Stoner v. Stoner, supra,* somehow shifts the burden of proof in this case to Husband to prove full and fair disclosure of the parties' assets. This position is simply wrong. *Stoner* dealt only with an agreement's failure to delineate specifically what statutory rights inure to a spouse under the Divorce Code. Moreover, *Stoner* held that a postnuptial agreement is enforceable even in the absence of any evidence, in the agreement or otherwise, that such statutory rights have been disclosed. The *Stoner* Court did not confront the issue of whether full and fair disclosure of assets was present. It actually reaffirmed the general principle set forth in *Simeone* that full disclosure of the parties' financial resources is a mandatory requirement for the enforceability of an agreement. We remind Wife that *Simeone* also specifically held that if an agreement recites that full and fair disclosure has been rendered, there is a presumption that such disclosure occurred and that the presumption can be rebutted only through clear and convincing evidence. Indeed, the agreement in *Stoner* neither set forth the values of the marital assets nor indicated that full and fair disclosure had been made. Rather, the circumstances of that case indicated that each spouse was aware of the value of the marital estate. *Stoner* certainly did not, contrary to Wife's suggestion at pages forty-four to forty-eight of her brief, overrule *Nigro* and *Adams,* and it did not shift the burden of proof in this case.

¶ 26 Wife also maintains that husbands have a confidential relationship with respect to their wives. *See* Appellant's brief at 29–31. Paternalistic approaches to women were rejected in *Simeone,* as reinforced in *Stoner.*

¶ 27 Wife also raises the allegation, "The mere fact that wife continued to sign the business tax returns after 1988 does not raise a credibility issue." Appellant's brief at 48. In point of fact, the trial court viewed evidence that Wife signed the returns as indicating that she knew Rampart's value and as rendering incredible her claim to the contrary. We agree with this assessment. Indeed, we find remarkable that on appeal Wife continues to maintain that her prior work experience with Rampart had no bearing on her knowledge of its value even while she acknowledges that she took care of "bank deposits and monthly billing." Appellant's brief at 49.

¶ 28 Wife's remaining allegations were addressed in the above analysis, are spe-

cious,[3] or are patently incorrect under the case law[4] and warrant no further discussion.

¶ 29 Order affirmed.

**3.** For example, even though a memorandum to the file drafted by Mr. Sutton when he prepared the agreement states that he spoke with Wife and she told him that she was aware of the value of the parties' assets, Wife contends that the memorandum "does not relate to 'full and fair disclosure.'" Appellant's brief at 40.

**4.** For example, Wife insists that it was not necessary for her to demonstrate the existence of a verbal misrepresentation or fraud to avoid the language in the agreement that full and fair disclosure was made. Appellant's brief at 32. *Simeone, supra,* holds otherwise.