**Rzicznek v. Rzicznek**

C.P. of Lawrence County, no. 10553 of 2003, C.A.

*Ryan C. Long,* for plaintiff.
*Thomas W. Leslie,* for defendant.

PICCIONE, *J.,* May 10, 2006—Before the court for disposition is Michael Rzicznek's (Husband) petition to enforce marital settlement agreement. Husband contends that all parties agreed to the marital settlement agreement; however, Beverly Rzicznek (Wife) contends that her former attorney, Susan M. Papa, Esquire, coerced her into signing the agreement.

Husband, Wife, Attorney Papa, and Attorney Ryan Long, attorney for Husband, met at Attorney Papa's office on May 2, 2005, in order to attempt to negotiate a marital settlement agreement. (N.T. 08-11-2005 p. 3.) Husband testified that the aforementioned individuals held a similar conference in July 2004 and both attorneys had been attempting to negotiate a settlement between the two meetings. (N.T. 08-11-2005 p. 3.)

Plaintiff's exhibit no. 1 is a written memorandum, signed by Husband and Wife, whereby the parties agreed to the allocation of their marital property between themselves. (N.T. 08-11-2005 pp. 4-5.) Plaintiff's exhibit no. 1 included a list of the parties' personal property. (N.T. 08-11-2005 p. 7.) The parties marked each item of property on said written memorandum in order to indicate whether Husband or Wife would retain possession of said item. (N.T. 08-11-2005 p. 7.) Husband testified that he and Wife signed the list attached to plaintiff's exhibit no. 1 on May 2, 2005. (N.T. 08-11-2005, p. 7.)

Plaintiff's exhibit no. 2 is the formal marital dissolution document prepared by Attorney Long subsequent to the May 2, 2005 conference. (N.T. 08-11-2005 p. 8.) Said document was intended to reproduce and finalize the agreement of the parties evidenced by the written memorandum signed by the parties at the May 2, 2005 conference. (N.T. 08-11-2005 p. 9.) Wife has not signed the formal marital dissolution document as set forth in plaintiff's exhibit no. 2.

Attorney Papa prepared plaintiff's exhibit no. 1 at the May 2, 2005 conference. (N.T. 08-11-2005 p. 24.) Attorney Papa stated that plaintiff's exhibit no. 1 "states the

particulars of the agreement between the parties." (N.T. 08-11-2005 p. 24.) Attorney Papa further testified that the marital dissolution document set forth in plaintiff's exhibit no. 2 "encompassed all the terms of the agreement that we reached." (N.T. 08-11-2005 p. 26.) Attorney Papa also testified that her client, Wife, signed the written memorandum in the presence of Husband and Attorney Long at the May 2, 2005 conference. (N.T. 08-11-2005 p. 30.) Upon her direct examination, Wife verified that she had signed the written memorandum. (N.T. 01-31-2006 p. 14.)

In pointing out why the parties signed a handwritten memorandum evidencing their agreement prior to Attorney Long drafting the formal marital dissolution document, Attorney Papa stated that: "[a]t that point I wanted it [the parties' agreement] in writing and the reason I wanted it in writing was because Mr. Rzicznek [Husband] had made certain concessions during the meeting, and I did not want him exiting my office and then speaking to a friend or rethinking it." (N.T. 08-11-2005 p. 31.)

Attorney Papa stated that Wife did not object to the agreement at any time during the May 2, 2005 conference. (N.T. 08-11-2005 p. 32.) However, Attorney Papa did state that Wife asked her how one proceeds at a master's hearing and expressed a concern that Husband's stock in Lane Enterprises could experience an increase in valuation due to a buyout. (N.T. 08-11-2005 p. 32.) Wife also indicated to Attorney Papa that she suspected Lane Enterprises was conspiring with Husband in order to conceal the full value of Husband's stock. (N.T. 08-11-2005 p. 39.) Husband is a production engineer at Lane

Enterprises. (N.T. 08-11-2005 p. 3.) Attorney Papa testified that she informed Wife that she found the conspiracy theory incredulous. (N.T. 08-11-2005 p. 40.) Attorney Papa did request a five-year open-ended period for Wife to experience the gain of any potential windfall from Husband's Lane Enterprises stock; however, Husband and Attorney Long rejected this request. (N.T. 08-11-2005 p. 40.) Attorney Papa testified that she and Wife discussed the possibility of pursuing this issue before a master, but eventually decided upon entering into the agreement set forth in plaintiff's exhibit no. 1. (N.T. 08-11-2005 p. 41.)

Wife testified that she felt pressured by Attorney Papa to sign the written memorandum. (N.T. 01-31-2006 p. 19.) However, Wife testified that Attorney Papa advised her that the agreement contained within the written memorandum was probably a better result than going before a master. (N.T. 01-31-2006 p. 19.) Wife also testified that she had difficulty making a decision on the matter and felt pressured by Attorney Papa, who allegedly stated: "if you can't make a decision on this, you're not going to do any better at a master's hearing". (N.T. 01-31-06 p. 19 ll. 1-3.) However, at no time did Wife testify that Attorney Papa told her that she had to sign the written memorandum; conversely, Wife's testimony indicates that Attorney Papa merely counseled Wife on the merits of the agreement contained within the written memorandum.

Prior to the May 2, 2005 conference, Attorney Papa informed Wife that any settlement reached by the parties would almost certainly involve a "no fault" divorce. (N.T. 08-11-2005 p. 34.) Attorney Papa testified that she in-

formed Wife that the agreement "was a very acceptable settlement; that I did not think going to a master's hearing would benefit her in any way because then we were getting into greater expenses for myself and that I could not say that she would do any better than that in a master's hearing." (N.T. 08-11-2005 p. 35.) Attorney Papa further stated that she felt the agreement regarding the parties' personal property was resolved in Wife's favor, because Wife indicated a strong desire that Husband not reenter the marital residence. (N.T. 08-11-2005 p. 37.) The court notes that the agreement included in plaintiff's exhibit no. 1 does preclude Husband from returning to the marital residence and provides for the husband's personal property to be delivered to him through the attorneys. This provision was intended to render a prior order of court, allowing Husband access to the marital residence, moot.

Attorney Papa testified that she terminated her role as Wife's attorney pursuant to telephone conversations with Wife that occurred on May 3 and May 4 of 2005. (N.T. 08-11-2005 pp. 27-28.) However, Attorney Papa indicated that, upon receiving the formal marital dissolution document from Attorney Long, she forwarded the document to Wife. Attorney Papa testified that, during a May 4, 2005 telephone conversation, Wife further inquired about a master's hearing; specifically:

"On May 4, 2005, she called me and asked questions about—she said she had heard from someone that master's hearings involve a stenographer's presence, and that she wanted to know if that transcript was a public record, if you went to a master's hearing. I asked her why. And she related that she basically wanted to go to a

master's hearing to say everything negative about Mr. Rzicznek [Husband] that she could and then circulate a transcript to his place of employment, relatives. And it was at that conversation that I was actually very abrupt with Mrs. Rzicznek [Wife] and said, that's it, you can get another attorney, I'm not going to engage in this." (N.T. 08-11-2005 p. 46.)

Attorney Papa's testimony regarding Wife's intentions was substantiated by Wife's direct testimony, where Wife stated: "I was going to confront my husband with information that I had found about his abnormal sexual behavior." (N.T. 01-31-2006 pp. 7-8.)

Attorney Papa further testified that Wife's complaints were "not as to the substance of the agreement, it was as to the other matters . . . ." (N.T. 08-11-2005 p. 46.) Specifically, Wife's complaints concerned the Lane Enterprises conspiracy theory and the master's hearing transcript. (N.T. 08-11-2005 p. 46.)

The Pennsylvania Supreme Court has defined *duress* as that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. *Carrier v. William Penn Broadcasting Company,* 426 Pa. 427, 233 A.2d 519 (1967).

Absent fraud, misrepresentation, or duress, spouses are bound by the terms of their agreements. *Paroly v. Paroly,* 876 A.2d 1061 (Pa. Super. 2005). A determination of whether the parties' financial positions were adequately disclosed is to be made on a case-by-case basis. *Id.* Such a disclosure need not be exact, so long as it is full and

fair. *Simeone v. Simeone,* 525 Pa. 392, 403, 581 A.2d 162, 167 (1990).

A court may award reasonable attorney's fees against a "participant for dilatory, obdurate or vexatious conduct during the pendancy of a matter." 42 Pa.C.S. §2503(7) (2005).

Both Husband and Attorney Papa testified that Wife signed all relevant portions of plaintiff's exhibit no. 1. (N.T. 08-11-2005 pp. 7, 30.) In her answer to rule to show cause, Wife does not deny signing plaintiff's exhibit no. 1, but avers that she signed them under "duress and coercion." (Defendant's answer to rule to show cause p. 1.) The court accepts Attorney Papa's testimony as credible; specifically, the court finds that Attorney Papa properly acted as competent counsel for Wife and advised Wife to act in her best interests. At times, this advice may have contradicted Wife's apparent desires to pursue a conspiracy theory and create a "public record" via transcript. The mere fact that Attorney Papa counseled Wife to undertake a course of action that would preclude Wife from pursuing these theories does not give rise to a claim of coercion or duress. Wife is unable to provide the court with any evidence that Attorney Papa forced or leveraged her into signing the agreement. The subjective opinion of a client claiming that counsel's advice pressured or coerced her into action does not establish a claim of coercion or duress.

The testimony establishes that Attorney Papa effectively negotiated an agreement that favored her client; in fact, Attorney Papa testified that she suggested that the parties reduce the agreement to writing at that conference because she was concerned that Husband would

try to back out. (N.T. 08-11-2005 p. 31.) Wife's testimony did not establish that Attorney Papa coerced her or employed duress in order to reach an agreement. Wife's primary complaint is that Attorney Papa did not pursue her conspiracy theory regarding Husband's stock assets or her purported desire to obtain a transcript in order to disseminate it to Husband's associates and family.

The court finds that Wife entered into a contractual agreement with Husband evidenced by the aforestated written memorandum and Wife's consent to said agreement was not the result of any misconduct or coercion by Attorney Papa. If Wife had specific concerns regarding the manner in which she was to receive the sum of $78,000, payable over five years, from Husband, she could have addressed that specific concern with Attorney Papa upon her receipt of the formalized marital dissolution document. Instead, Wife refused to sign, or in any way discuss the agreement, which necessitated the instant litigation. There is no credible testimony before this court that Wife raised this specific issue upon receipt of the marital dissolution agreement; furthermore, the court notes that the written memorandum did not provide any mechanism for Wife to receive the $78,000, but merely stated that she would receive it within five years. The court finds that the marital dissolution agreement's provision regarding the payment of the $78,000 is consistent with the provisions within the signed memorandum. Therefore, Husband's petition to enforce marital settlement agreement is hereby granted.

Husband requested an award of reasonable attorney's fees. Although attorney's fees are the exception and not the rule in litigation, said fees may be awarded where

the party against whom such fees are sought engages in "dilatory, obdurate or vexatious conduct during the pendancy of a matter." 42 Pa.C.S. §2503(7) (2005). The court finds that Wife's refusal to sign the formalized marital settlement document was not based on a good faith legal theory, but rather the intent to escape a contractual agreement in order to pursue her ulterior ambitions that do not appear related in any way to the equitable distribution of the parties' marital assets. If Wife was merely concerned about any perceived inconsistencies with the formal marital settlement agreement, those concerns should have been addressed with Attorney Papa upon her receipt of the formalized marital dissolution document. The court finds that Wife's actions amount to dilatory, obdurate or vexatious conduct pursuant to Pennsylvania law. Husband shall be awarded reasonable attorney's fees in the amount of $1,075.91 as set forth in plaintiff's exhibit no. 3.

## ORDER

And now, May 10, 2006, the court having held hearings on August 11, 2005 and January 31, 2006, on petition to enforce marital settlement agreement, with Ryan C. Long, Esquire, appearing and representing Michael Rzicznek (Husband), and Thomas W. Leslie, Esquire, appearing and representing Beverly Rzicznek (Wife), the court finds and it is hereby ordered, adjudged and decreed as follows:

(1) The petition to enforce marital settlement agreement is hereby granted as expressed in the accompanying opinion.

(2) Husband's petition for attorney's fees is granted pursuant to the attached opinion. Wife is hereby ordered to pay attorney's fees in the amount of $1,075.91.

(3) The prothonotary shall serve notice of this order of court and opinion upon counsel of record for the parties, and if a party has no counsel, then upon said party at their last known address as contained in the court's file.