J-S25028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THOMAS A. MANSMANN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JONI B. MANSMANN | |
| Appellee | No. 1738 WDA 2014 |

Appeal from the Decree filed September 24, 2014
In the Court of Common Pleas of Washington County
Domestic Relations at No: 193 DR 2013

BEFORE:  BENDER, P.J.E., STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                                **FILED JUNE 30, 2015**

Thomas A. Mansmann (Thomas/Appellant) appeals from the divorce decree filed on September 24, 2014 in the Court of Common Pleas of Washington County that made final the trial court's April 22, 2014 order dismissing his exceptions to a hearing officer's recommendation and upheld the November 22, 2002 prenuptial agreement entered into with his ex-wife, Joni Mansmann (Joni/Appellee).  Upon review, we affirm.

The facts gleaned from the record reveal that Thomas and Joni met in July of 2002.  Both were previously married and divorced.  Almost immediately after meeting, Thomas moved in with Joni in a townhome she owned.  When discussions between the parties turned to marriage, the need

_____

[*] Retired Senior Judge assigned to the Superior Court.

for a prenuptial agreement became part of the conversation. Notes of Testimony (N.T.) Support Hearing, 10/28/13, at 39.

The parties planned a November 27, 2002 Florida wedding. On November 22, the day before Thomas and Joni were to fly to Florida for the ceremony, the parties signed a prenuptial agreement that included, *inter alia*, the following language:

> WHEREAS, the parties hereto intend and desire to define that property which each brings to the marriage, to the end that such property shall be designated and set apart as the separate and individual property of each of the respective parties hereto; and
>
> * * *
>
> WHEREAS, the parties hereto have discussed their property rights with each other and have made such disclosures of their respective assets to one another as the parties have deemed desirable; and
>
> WHEREAS, the real and/or personal property which each of the parties hereto intends to be designated and set apart as his and/or her separate and individual property, is set forth in Exhibits "A" and "B," which Exhibits "A" and "B" are attached hereto and made a part hereof;[1]
>
> NOW, THEREFORE, in consideration of their aforesaid forthcoming marriage to each other, and in consideration of the foregoing recitals and of the mutual covenants and agreements hereinafter contained, and intending to be legally bound hereby, the parties hereto hereby mutually covenant and agree as follows:

---

[1] Exhibit "A" lists Joni's "separate and individual property" as "1) Marital Residence and Real Estate located at 279 Murrays Lane, Pittsburgh, Pennsylvania 15324; 2) Mellon Financial 401K Plan; and 3) H&R Block Roth IRA." Exhibit "B" lists Thomas' "separate and individual property" as "NONE."

* * *

10. Each of the respective parties hereto further hereby warrants and acknowledges that he and/or she is, at present, self-supporting, and/or that he/she has been gainfully employed during his/her adult life, and does not, in the future, wish to have any alimony, support, or any other like payment from the other party hereto. Therefore, both [Thomas] and [Joni] hereby expressly and voluntarily release all right to receive any alimony, support, or any other like payment from the other party, in the event that the parties shall either separate and/or become divorced, and regardless of the grounds for the separation and/or divorce.

11. Each party hereto hereby acknowledges and affirms that he/she has made a true, correct, and complete representation of his/her financial status, and of all of the debts and/or obligations for which he/she presently is responsible, to the other party hereto, and each party hereby further covenants and agrees that all such debts and/or obligations will be, and will forever remain, the sole and complete responsibility of the party presently responsible therefor. . . .

Prenuptial Agreement, 11/22/02, at (unnumbered pages) 1-2 and 5.

The parties later separated and Joni initiated divorce proceedings in August 2012. The divorce action continued though 2013 with the focus primarily on custody of the parties' two children. In the meantime, Thomas filed a complaint seeking spousal support. By interim order entered April 16, 2013, the trial court dismissed the support complaint without prejudice based on the waiver of support language contained in Paragraph 10 of the prenuptial agreement. Following Thomas' request for *de novo* consideration, a support hearing was held on June 10, 2013. On June 15, 2013, the

hearing officer issued his findings and recommendations, dismissing Thomas' complaint based on the waiver language of the prenuptial agreement.

Thomas filed timely exceptions to the hearing officer's findings and recommendations, claiming the prenuptial agreement was invalid because he entered into it under duress. By order dated September 16, 2013, the trial court granted Thomas' exceptions and remanded the case to the hearing officer for a hearing on the validity of the prenuptial agreement, noting it was incumbent upon the hearing officer to ask whether Thomas could offer any testimony or evidence to support his claim the agreement should be invalidated.

A hearing was conducted on October 28, 2013. At the conclusion of the proceeding, the hearing officer recommended that the prenuptial agreement be upheld and enforced. Thomas again filed exceptions raising the issue of coercion. Exceptions to Support Master's Report and Recommendation, 11/1/13.[2] Those exceptions were entertained by the trial

_____

[2] After the time for filing exceptions, Thomas asserted a second basis for setting aside the agreement, *i.e.*, that Joni failed to provide sufficient disclosure of assets. Pennsylvania Rule of Civil Procedure 1910.12(f) provides:

> Within twenty days after the date of receipt or the date of mailing of the report by the hearing officer, whichever occurs first, any party may file exceptions to the report or any part thereof, to rulings on objections to evidence, to statements or findings of facts, to conclusions of law, or to any other matters occurring during the hearing. Each exception shall set forth a

*(Footnote Continued Next Page)*

court at a hearing on April 21, 2014. By order entered the following day, the trial court dismissed Thomas' exceptions, stating:

> [T]his [c]ourt does not find that [Thomas] was coerced into signing the pre-nuptial agreement. This is because of the exchange between [Thomas] and the hearing office[r]. The hearing officer asked [Thomas], "Your testimony is if all of [Joni's] debts had been listed on Exhibit A, you would not have signed the agreement?" [Thomas] responded, "And her assets, absolutely everything. I may or may not have, sir." Therefore, this [c]ourt finds [Thomas] incredible when he contended in his exceptions that he was coerced into signing the agreement.
>
> As for the issue of failure to provide sufficient disclosure, this [c]ourt finds that [Thomas] did not properly raise the issue. His exceptions were timely filed but only address the issue of coercion. The first time [Thomas] mentioned full and fair disclosure was in his brief, which was filed January 7, 2014. This was 46 days after the exceptions were due, which was November 22, 2013. [Thomas] did not request any extension for the filing of exceptions on the issue of full and fair disclosure. Permitting [Thomas] to argue this issue would otherwise make the "procedural time requirement of Rule 1920.55[-2] would be rendered a nullity." ***Sipowicz v. Sipowicz***, 517 A.2d 960, 962 (Pa. Super. 1986).[3]

*(Footnote Continued)* ————————————————

> separate objection precisely and without discussion. **Matters not covered by exceptions are deemed waived unless, prior to entry of the final order, leave is granted to file exceptions raising those matters.** If exceptions are filed, any other party may file exceptions within twenty days of the date of service of the original exceptions.

Pa.R.C.P. 1910.12(f) (emphasis added).

[3] We note that the trial court cites ***Sipowicz***, which refers to Pa.R.C.P. 1920.55-2 and its waiver of matters not raised in timely exceptions. Rule 1920.55-2 applies to exceptions from a master's report in a divorce proceeding while Rule 1910.12(f), with language mirroring Rule 1920.55-2, applies to exceptions from a hearing officer's report in support proceedings.
*(Footnote Continued Next Page)*

Trial Court Order, 4/22/14, at 1-2 (references to notes of testimony omitted).

Thomas filed a notice of appeal from the April 22, 2014 order. This Court quashed the appeal as an interlocutory order prior to entry of a final decree of divorce, citing **Campbell v. Campbell**, 516 A.2d 363 (Pa. Super. 1985) and **Fried v. Fried**, 501 A.2d 211 (Pa. 1985). On September 24, 2014, the trial court entered a final divorce decree. This timely appeal followed.

Thomas presents three issues for our consideration:

1. Did the Trial Court err in failing to find that [Thomas] signed the Pre-Nuptial Agreement under duress?

2. Did the Trial Court err in ruling that [Thomas] waived his right to argue that Joni had not made a full and fair disclosure of her assets at the time of presenting him with the Pre-nuptial Agreement?

3. Did Joni fail to make a full and fair disclosure of her assets at the time of presenting him with the Pre-nuptial Agreement?

Appellant's Brief at 2.

This Court has stated:

[P]renuptial . . . agreements are contracts and are governed by contract law. Moreover, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of

_(Footnote Continued)_ —————————————

This Court has likewise recognized that the failure to preserve a matter in timely-filed exceptions in support matters results in waiver. **See, e.g., Miller v. Bistransky**, 679 A.2d 1300, 1302 (Pa. Super. 1996).

discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's factfinding function.

***Paroly v. Paroly***, 876 A.2d 1061, 1063 (Pa. Super. 2005) (quoting ***Holz v. Holz***, 850 A.2d 751, 757 (Pa. Super. 2004) (internal citations omitted)).

In his first issue, Thomas argues that the trial court erred in concluding Thomas was not under duress when he signed the prenuptial agreement five days prior to his wedding. "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." ***Simeone v. Simeone***, 581 A.2d 162, 165 (Pa. 1990). As Thomas recognizes, this Court has "long defined duress as that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." Appellant's Brief at 5 (quoting ***Adams v. Adams***, 848 A.2d 991, 993 (Pa. Super. 2004) (citations omitted)).

At the October 28, 2013 support hearing, Thomas explained:

[T]here was a time frame . . . that I was given this and a notary that had to be done by 3:00 on the 22nd. We were wheels up in a couple days going to Miami to get married. The timeline in order to do this, there wasn't enough sufficient time with the holiday, a weekend, plus the fact that we were going. I was asked to either sign this, get it notarized or my daughter, who was with us from a previous marriage would be sent home and I would not be able to get married. We'll call this all off. Reluctantly, I look back, and I signed it, and here we are today. I did not ever in any shape or form think that I would be in this position right now with Joni. We were looking forward to starting our life, but I was rushed and forced into signing it or we're not getting married. I trusted Joni.

N.T. Support Hearing, 10/28/13, at 9-10. The hearing officer then asked Thomas if there was any other coercion involved, other than the time constraint to which he testified. Thomas responded:

> That's pretty - - nothing physically in terms of that. I don't think that's necessary, that the either/or, sign this or don't get married. I wanted to marry this lady. We were in love and we were looking forward to start - - we had kind of a pecking order in place. We were going to start a family. We were heading to Florida. Graciously accepted my daughter and made us part of this union, and we had plans set up to go and get married. I don't want to say I would have signed anything. I have some intelligence, but when you're playing with my heart like that and forcing, you know, something of that nature, again, reluctantly authorized this, not knowing we would be here today.

*Id.* at 10-11.

At the conclusion of the October 28, 2013 proceeding, the hearing officer issued findings of fact addressing, *inter alia*, Thomas' claims of duress, stating:

> [Thomas] appears to be convinced that he was unlawfully coerced by [Joni's] insistence that the marriage would not take place in the event he did not sign the agreement. This was not unlawful coercion as [Joni] had every right to insist upon such an agreement and [Thomas] had every right to refuse to sign the same.
>
> Under these circumstances, [Thomas] has failed to meet his burden of proof by clear and convincing evidence that he was unlawfully coerced into signing the agreement and/or that the prenuptial agreement was not valid.

Findings of Hearing Officer, 10/29/13, at 3.

At the April 21, 2014 hearing on Thomas' exceptions, his counsel repeated the duress argument, offering the timeline and the lack of time to

seek review in support of a finding of duress. Joni's counsel countered that the only "duress was that he wanted to get married. . . . He was free to say no, I will not sign it. He was free to enter into an Agreement, which he did, and by entering into that Agreement, he is now bound by that Agreement." N.T. Exceptions Hearing, 4/21/14, at 5.

The trial judge rejected Thomas's duress argument in its order entered the following day, in which he ordered that Thomas' exceptions be dismissed and the hearing officer's recommendation become a final order of court. Trial Court Order, 4/22/14, at 1. Mindful of this Court's definition of duress as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness," *see Adams*, 848 A.2d at 993, we conclude the trial court did not abuse its discretion or commit error of law by rejecting Thomas' duress argument. Appellant's first issue fails for lack of merit.

In his second issue, Thomas contends the trial court erred in finding waiver of his claim that Joni failed to make a full and fair asset disclosure in the prenuptial agreement. As noted above, Thomas filed timely exceptions to the hearing officer's October 29, 2013 recommendation that Thomas' spousal support complaint be dismissed. In his exceptions, Thomas raised the issue of coercion. However, he did not mention the issue of full and fair

disclosure before raising it in his brief filed on January 7, 2014, well beyond the deadline for filing exceptions.

Thomas counters the trial court's finding of waiver by suggesting "the issue of full and fair disclosure is subsumed within the issue of duress." Appellant's Brief at 7. He asserts he attempted to prove duress "by pointing to two elements: [Joni's] presentment of the agreement when Appellant had very little time to look the terms over, <u>and</u> [Joni's] omission from the document of a necessary attachment, fully listing her assets." ***Id.*** at 7-8 (underscoring in original).

Thomas does not offer any legal authority to support his novel theory. Joni, by contrast, directs us to this Court's decision in ***Sipowicz***, in which this Court held that untimely exceptions under Rule 1920.55(a) are waived. "[O]therwise the procedural time requirement of Rule 1920.55 would be rendered a functional nullity." ***Id.***, 517 A.2d at 962. As noted above, ***see*** n. 3, this Court has likewise recognized that waiver results from the failure to preserve a matter in timely-filed exceptions under Rule 1910.12(f) in support cases. ***Miller***, 679 A.2d at 1302. Because Thomas failed to preserve an exception regarding full and fair disclosure, we agree with the trial court's determination that the issue is waived. Thomas' second issue fails.

Even if it were not waived, the full and fair disclosure issue—raised in the third issue presented in Thomas' brief—would not afford Thomas any

relief. In that third issue, Thomas complains Joni failed to make a full and fair disclosure of her assets, rendering the agreement invalid. We cannot agree.

In his brief, Thomas provides an excerpt from **Porreco v. Porreco**, 811 A.2d 566 (Pa. 2002), which instructs:

> [D]espite the prevailing theme in **Simeone** that the provisions of prenuptial agreements should be subject to no greater scrutiny than ordinary business contracts, we nevertheless continued the principle from our previous decisions that these agreements will only be enforced where the parties make a "full and fair" disclosure. In addition to preserving this vestige of our common-law caution towards the enforcement of prenuptial agreements, we affirmed that these agreements may be invalidated when fraudulently procured. "If an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence." **Simeone**, 525 Pa. at 403, 581 A.2d at 167. Thus, in **Simeone**, we recognized two alternate bases for invalidating a prenuptial agreement: (1) any ground for voiding a contract under the common law (such as fraud); and (2) where a party fails to make "full and fair" disclosure of his or her own assets prior to entering the agreement.

**Id.** at 570 (internal citation omitted).[4]

The 2002 prenuptial agreement signed by Thomas and Joni indicates "the parties hereto have discussed their property rights with

_____

[4] **See also Simeone**, 581 A.2d at 167 ("It is well settled that this disclosure need not be exact, so long as it is 'full and fair.' In essence therefore, the duty of disclosure under these circumstances is consistent with traditional principles of contract law." (citations omitted)).

each other and have made such disclosures of their respective assets to one another as the parties have deemed desirable." Prenuptial Agreement, 11/22/02, at (unnumbered page) 1. Further, "the real and/or personal property which each of the parties hereto intends to be designated and set apart as his and/or her separate and individual property, is set forth in Exhibits "A" and "B," which Exhibits "A" and "B" are attached hereto and made part hereof." *Id.* And, finally,

> 11. Each party hereto hereby acknowledges and affirms that he/she has made a true, correct, and complete representation of his/her financial status, and of all of the debts and/or obligations for which he/she presently is responsible, to the other party hereto, and each party hereby further covenants and agrees that all such debts and/or obligations will be, and will forever remain, the sole and complete responsibility of the party presently responsible therefor. . . .

*Id.* at (unnumbered page) 6.

At the conclusion of the October 28, 2013 proceeding, the hearing officer explained:

> In the present case, the [h]earing [o]fficer finds that the agreement is unambiguous and that [Joni's] disclosure to [Thomas] was "full and fair" within the meaning of Pennsylvania law. The agreement explicitly contains a provision acknowledging that full and fair disclosure has been made and there has been no refutation by [Thomas] of the accuracy of [Joni's] disclosures except for minor deficiencies, e.g. checking and savings accounts of which [Thomas] was aware. There has been no showing the [Joni's] disclosure did not sufficiently reveal her general financial circumstances and/or [that Thomas] was unable to obtain information regarding her estate. The parties lived together prior to marriage and [Thomas] was certainly aware of [Joni's] financial circumstances.

Findings of Hearing Officer, 10/29/13, at 2.

We agree. The prenuptial agreement provides that "disclosures of their respective assets" have been discussed and made, and that "a true, correct and complete representation" of financial status, including assets and debts, has been made. Under **Simeone** and **Porreco**, a presumption of full disclosure arises. Thomas asserted he entered into the agreement under duress, a notion we have rejected, but he clearly has not rebutted the presumption of disclosure by clear and convincing evidence. Therefore, even if not waived, Thomas is not entitled to relief on his third issue.

Thomas has failed to demonstrate abuse of discretion or error of law in the trial court's rulings. Therefore, we affirm the September 24, 2014 decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2015

- 13 -