J-A04021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARY JANE DOYLE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES T. DOYLE, | |
| Appellant | No. 617 WDA 2015 |

Appeal from the Decree April 9, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-98-009613-2004

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED APRIL 26, 2016**

Mary Jane Doyle ("Wife") appeals from the Divorce Decree entered on April 9, 2015.  The issues raised by Wife relate back to the December 30, 2013 order, which denied her request for declaratory judgment and upheld the marriage settlement agreement ("MSA") entered between James T. Doyle ("Husband") and Wife.  We affirm.

The relevant facts and procedural history of this case were summarized by the trial court as follows:

> The within matter comes before the court on [Wife's] request for declaratory judgment with respect to the validity of the Marriage Settlement Agreement (MSA) entered into by the [p]arties on June 3, 2009.  [Wife] requests declaratory judgment that the MSA is void, invalid, and non-binding.  A trial on [Wife's] Complaint for Declaratory Judgment was held on October 16, 2013.
>
> The [p]arties were married in November[ of] 1981[,] and had three children, one of whom is deceased.  [Husband] worked

as a pharmacist throughout the marriage while [Wife] worked as a real estate agent beginning in 1993. Wife filed for divorce on four (4) separate occasions, the first filing occurring on August 21, 1998. However, the complaint was never served on Husband as the couple reconciled. Wife filed an Amended Complaint in Divorce on August 27, 1999[,] but Wife did not pursue this second attempt at divorce as the couple agreed to reconcile again. Wife filed a Second Amended Complaint in Divorce on September 21, 2006, at which time she was represented by Attorney Lisa Petruzzi for a period of approximately six (6) weeks. On June 4, 2009, Wife filed her last Complaint in Divorce.

During the pendency of Wife's representation by Attorney Petruzzi, Wife provided a list of marital assets to [A]ttorney Petruzzi and, at trial, Wife testified that she was aware of certain marital assets which were valued at $360,869.51. Attorney Petruzzi, on October 11, 2006, wrote a letter to Husband setting forth, in pertinent part, that "[Wife] indicates that the two of you have discussed some manner of settling your marital property, and I will be preparing a Settlement Agreement along those lines and forwarding it to you for your review."

The relationship with Attorney Petruzzi ended after Attorney Petruzzi had forwarded to Husband a copy of the Second Amended Complaint in Divorce, an Acceptance of Service, and the letter referred to above. The [p]arties thereafter met with Attorney Richard Malesky, a business acquaintance of Wife, to memorialize a comprehensive agreement that they had reached. Wife acknowledged that a consensus regarding the division of the marital property had been reached with Husband at that time. She also acknowledged that she entered into the agreement with Husband knowing that she lacked full knowledge of the marital estate. She testified that she simply wanted to get out of the marriage, and that she knew that she had gotten a raw deal although she just did not know how bad it was.

Wife then sought the services of Attorney Mark Joseph and, on April 29, 2009, both she and Husband executed a fee agreement with Attorney Joseph with the expectation that he would represent both [p]arties in a no-fault divorce. Soon thereafter, Wife sent emails to Attorney Joseph outlining the terms she would like the MSA to contain. She also gave deadlines and set forth clear expectations of how she would like

the [p]arties' accounts to be divided. Furthermore, Wife advised in these emails that she was reneging on the deal that she and Husband had purportedly previously reached and demanded an increase of $15,000.00 with respect to Husband's proposed cash payment to her. Specifically, Wife stated in one of her emails the following:

> I am asking for a settlement of $100,000 and that I will remove my name from Husband's TD Ameritrade account and release myself from all his checking accounts, savings accounts, pension account, retirement, IRAs, stocks and any other investments. In turn he will release himself from my checking account, savings accounts, pension account, 401(K) account, stocks, SEP and IRAs. At the time he gives me a certified check for $100,000 we will transfer the title and deed of our current home at 111 Magnolia Dr., Glenshaw, PA  to James T. Doyle and remove my name from his Ameritrade account.

Finally, at trial, Wife acknowledged that the MSA accomplished exactly what she demanded in her emails to Attorneys Maleski and Joseph.

Trial Court Opinion ("TCO"), 1/30/14, at 1-3.

After the hearing on Wife's complaint for declaratory judgment, the court entered an order finding that Husband and Wife's June 3, 2009 MSA was valid, binding, and enforceable against the parties. *See* Order of Court, 12/30/13. Wife initially filed a notice of appeal on January 23, 2014, followed by a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. However, this Court determined that the subject order was not final and appealable and, thus, we quashed the appeal as interlocutory. The case was remanded to the trial court.

On April 9, 2015, the lower court entered a divorce decree, rendering the December 30, 2013 order final and appealable. ***See Sneeringer v. Sneeringer***, 876 A.2d 1036, 1038 (Pa. Super. 2005) (stating "[t]his Court

- 3 -

has … determined that interim matters in divorce actions do not become final until a divorce decree is entered"). Wife immediately thereafter proceeded with filing notice of the instant appeal. The trial court adopted its January 30, 2014 opinion (TCO) as its Rule 1925(a) opinion. *See* Order of Court, 4/15/15.

Wife now presents the following issues for our review on appeal:

I.   Whether the trial court committed an error of law in holding that the parties' Marital Settlement Agreement could only be invalidated for lack of full and fair disclosure (which by itself has no "reliance" requirement) if Wife could prove misrepresentation (as to which reliance is required), when as a matter of law, nondisclosure and misrepresentation are separate and independent grounds for invalidating the [MSA].

II.  Whether the trial court committed an error of law in holding that a waiver of disclosure need not be in writing.

III. Whether the trial court committed an error of law or abuse of discretion in holding that [Wife] waived her right to full and fair disclosure.

Wife's Brief at 4.

To begin, we note our standard of review:

The determination of marital property rights through prenuptial, postnuptial and settlement agreements has long been permitted, and even encouraged. Both prenuptial and post-nuptial agreements are contracts and are governed by contract law. Moreover, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's fact-finding function.

*Paroly v. Paroly*, 876 A.2d 1061, 1063 (Pa. Super. 2005) (internal quotation marks and citations omitted).

Wife asserts that the trial court committed an error of law in holding that the MSA could only be invalidated by proving both a lack of full and fair disclosure *and* fraud or misrepresentation. Wife's Brief at 13. However, after careful review, we conclude that the trial court properly applied the controlling law.

We previously reviewed the seminal decision of *Simeone v. Simeone*, 581 A.2d 162 (Pa. 1990), regarding the standards for determining the validity of marital settlement agreements:

> Under *Simeone*, we are not permitted to review the reasonableness of a marital settlement agreement to determine its validity, and the fact that the parties did not have separate representation is not relevant. That case abolished prior, paternalistic approaches to enforcing such agreements and announced, "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." [*Simeone*,] 581 A.2d at 165.

> The *Simeone* Court reaffirmed the "longstanding principle that a full and fair disclosure of the financial positions of the parties is required…." *Id.* [at 165].

*Paroly*, 876 A.2d at 1065. *See also Stoner v. Stoner*, 819 A.2d 529, 533 (Pa. 2003) (reaffirming "the principle in *Simeone* that full disclosure of the parties' financial resources is a mandatory requirement").

Wife asserted in her declaratory judgment action that the MSA is invalid due to a lack of full and fair disclosure and as a result of fraud and misrepresentation. Amended Complaint for Declaratory Judgment, 6/9/10,

- 5 -

at 2, ¶¶ 6-7 (unpaginated).  However, the MSA contains the following disclosure language: "The parties hereto acknowledge and agree that each has provided to the other and received from the other a full, fair, and frank disclosure of the parties' and each of the party's financial condition and position."  MSA, 6/3/09, at 5, ¶ 11 (unpaginated).  "If an agreement provides that full disclosure has been made, a presumption of full disclosure arises.  If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence." *Paroly*, 876 A.2d at 1066 (quoting *Simeone*, 581 A.2d at 167).

> The elements of fraudulent misrepresentation are well settled.  In order to void a contract due to a fraudulent misrepresentation, the party alleging fraud must prove, by clear and convincing evidence:  (1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance.  All of these elements must be present to warrant the extreme sanction of voiding the contract.

*Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002) (internal citations omitted).

Clearly, there is a presumption of full disclosure in the present case, based on the disclosure language expressly stated in the MSA.  Because of Wife's attempt to rebut this presumption with an assertion of fraud and misrepresentation, the trial court properly applied the aforementioned

elements outlined in **Porecco**, and concluded that there was no fraudulent misrepresentation involved in the execution of the MSA. The trial court's conclusion is well-supported by the following:

> The court does not find that Husband made any material representation to Wife that Wife relied on when entering into the MSA. On the contrary, Wife made numerous representations to Attorneys Maleski and Joseph prior to the execution of the MSA that show that she essentially initiated and controlled the negotiations relative to the division of the marital assets. She understood that Husband's assets had a much greater value than hers and acknowledged, when making her settlement proposal some three (3) weeks before signing the MSA, in her May 5th, 2009 email to attorneys Maleski and Joseph that "what she is asking for is far less than what she is entitled to." Furthermore, Wife testified at trial that she was "being more than fair with this settlement offer. If you total up Husband's savings against hers, what she is asking for is far less than what she is entitled to…"

TCO at 5-6.

We discern no abuse of discretion by the trial court, as its decision to validate the MSA is based on facts well supported by the record. Moreover, the MSA expressly states that a full and fair disclosure was made and Wife's testimony is indicative that she had knowledge of the value of Husband's assets. "Case law provides that where the circumstances indicate that a spouse has knowledge of the general value of the couples' assets, an agreement will be upheld especially where … the agreement recites that full and fair disclosure was made." **Paroly**, 876 A.2d at 1067.

Based on the presumption of a full and fair disclosure in the MSA and Wife's failure to rebut this presumption, we deem Wife's second and third

issues regarding waiver of disclosure to be moot.  For the reasons provided above, we affirm the court's order denying Wife's request for declaratory judgment and upholding the MSA dated June 3, 2009.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/26/2016